STATE OF OREGON, *Respondent,*
*v.*
ARTHUR LYNN BROADSWORD, *Appellant.*
(No. 96686, CA 8479)
574 P2d 670

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the caused for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Kent B. Thurber, Assistant Attorney General, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Defendant was convicted by a jury of burglary in the first degree. ORS 164.225. He appeals, assigning as error the denial of a motion for mistrial, the admission of certain evidence, the denial of a motion for acquittal based upon the alleged lack of corroboration of accomplice testimony, and the denial of a motion for new trial based upon newly discovered evidence.

Sometime around midnight on March 17, 1976, Mark Clifton and Richard Plieth went to the Mt. Scott golf course and nightclub (Mt. Scott) with the intention of breaking in and stealing "booze and money." When they arrived they found that Mt. Scott was a more popular "after hours" spot than they had assumed; two burglars were already at work there. As they approached the rear of the building, Clifton and Plieth encountered a man whom they later identified as the defendant standing outside the Mt. Scott office. Another man, later identified as Eddie Joe Mustain, was inside the building.

Clifton and Plieth explained to defendant that they were "there to burglarize the place ourselves." When defendant told them that he and Mustain were getting the money, Plieth and Clifton decided to abandon their plans to take money and told defendant that they only wanted alcohol. Defendant replied that that would be all right as long as Clifton and Plieth "stuck close by."

Plieth and Clifton entered Mt. Scott and gathered up a case of wine and some stereo equipment. While they were doing so, they saw defendant and Mustain a couple of times but did not communicate or cooperate with them in any way. There is no indication that Clifton or Plieth made any attempt to "stick close by" defendant and Mustain. While inside, Plieth thought he smelled wires burning, but neither he nor Clifton saw a cutting torch or any other burglary tools.

[ 333 ]

As Clifton and Plieth were moving the wine and stereo equipment outside the building, they saw defendant and Mustain leaving. One was carrying a black bag and the other was carrying one or two plastic buckets.

The burglary (or burglaries) was (were) later discovered by a security guard. The safe had been opened with a cutting torch and about $300 in coins taken. In addition, several vending machines had been broken into.

Early on the morning of May 4, 1976, a deputy sheriff observed a Volkswagen van parked along Highway 30 near the Troutdale bridge. Later that morning another deputy spotted Mustain about a quarter of a mile from the van. He was soaking wet and was carrying $533 in cash. The deputy asked him why he was wet and why he was carrying so much money. He also asked about the van. Although Mustain at first denied any knowledge of the van, he later asked another deputy to retrieve his cigarettes from the vehicle. The deputy then saw in the van a plastic bucket full of coins and currency and a black bag, which subsequently was found to contain a cutting torch. Also in the van was a wallet containing defendant's identification.

Defendant and Mustain were jointly tried and convicted of burglary in the first degree. Mustain's appeal is the subject of a separate case, decided this day.

Defendant first assigns as error the denial of his motion for mistrial based upon the admission of testimony by the deputy sheriff that he had first asked Mustain why he was soaking wet and then why he was carrying $533 in cash, and that Mustain had replied that he had fallen in the river twice. Before the deputy related Mustain's answer to the second question, defendant moved for a mistrial. Defendant asserts that the deputy's testimony constituted inadmissible evidence of other crimes.

■ Although Mustain's arrest was apparently a consequence of an investigation of a crime other than the Mt. Scott burglary, the prosecution was careful to keep that from the jury. The jury heard no testimony which in terms related that arrest to any other crime. There was nothing from which the jury could draw an inference that Mustain had committed some other crime. The trial court properly denied the motion for mistrial.

Defendant's second assignment of error concerns the admission into evidence of the black bag and its contents. In particular he contends that the state failed adequately to establish a "chain of custody" and that the evidence was irrelevant because it was not linked to the crime or to defendant. After the bag was seized from the van, it was checked in by the property clerk of the sheriff's department. It was later sent to the state of Washington as part of an investigation there. There was no testimony by the Washington authorities. The property clerk did testify, however, that the bag appeared to be the same one as had been checked in on May 4 in connection with the arrest of Mustain.

■ In *State v. Anderson*, 242 Or 368, 374, 409 P2d 681, 683-84 (1966), the court observed that in order for evidence to be admissible "ordinarily * * * a foundation * * * must be laid by the testimony of each person who had possession or custody of the article." The court held, however, that

"* * * this is not an inexorable rule of law and the ultimate question always is whether the proof shows with reasonable certainty that the article offered is the identical article taken from the accused. The question is addressed in the first instance to the sound discretion of the trial judge." 242 Or at 374.

Considering the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it, the "chain of custody" objection was properly overruled.

*State v. Anderson, supra; see State v. Reese,* 25 Or App 231, 236, 548 P2d 998, 1001 (1976).

■ Defendant argues that the black bag and the cutting torch found inside it were irrelevant because they were not linked to the crime. We do not agree. Both Clifton and Plieth testified that the bag offered into evidence resembled the one they had seen in the possession of defendant or Mustain at Mt. Scott, and an expert witness testified that a cutting torch had been used to open the Mt. Scott safe. *See State v. Planck,* 3 Or App 331, 473 P2d 694, *rev den* (1970), *cert denied,* 406 US 973 (1971).

■■ Defendant makes a similar objection with reference to the van. That vehicle and the evidence found in it were linked to Mustain. About that there is no serious argument. Although the evidence was not discovered until two months after the burglary, defendant has pointed to no prejudicial effect which would outweigh its probative value. *See State v. Manrique,* 271 Or 201, 205, 531 P2d 239, 241 (1975); *compare State v. Flett,* 234 Or 124, 380 P2d 634 (1963). Having been linked to the crime and to Mustain, the evidence was admissible. If the jury chose to believe Clifton and Plieth's testimony that Mustain and defendant were the two burglars they encountered at Mt. Scott, defendant would be chargeable with the acts of Mustain committed in furtherance of their common criminal purpose, *see State v. Cantrell,* 1 Or App 454, 463 P2d 593 (1970), and could be convicted of burglary in the first degree even if he had never been in actual possession of the bag and its contents. The evidence was, therefore, properly admitted.

ORS 136.440(1) provides that "[a] conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense." Defendant moved for acquittal on the grounds that Clifton and Plieth were accomplices as a matter of law and their testimony was uncorroborated. The court

sent the issue to the jury, fully instructing them as to the definition of "accomplice." ORS 136.440(2) defines an accomplice as one "who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165 * * *." ORS 161.155 provides:

> "A person is criminally liable for the conduct of another person constituting a crime if:
> "* * * * *
> "(2) With the intent to promote or facilitate the commission of the crime he:
> "* * * * *
> "(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime * * *"

■ In *State v. Fitzgerald,* 14 Or App 361, 366, 513 P2d 817, 820 (1973) we held that "[t]he question of whether a state's witness is an accomplice is for the jury when different inferences can be drawn from the evidence." There was evidence from which the jury could have inferred that Clifton and Plieth agreed to "stick close by" and that they so agreed with the required intent. These, however, were not the only inferences which could have been drawn from the evidence. The issue was properly left to the jury.

Finally, defendant assigns as error the denial of his motion for a new trial based upon newly discovered evidence. That evidence was as follows: In July, 1976, a cutting torch was stolen from Condon Motors. As a result of the investigation of that theft, defendant obtained an invoice from Central Oregon Welders indicating that a cutting torch with the same serial number as that seized from Mustain had been delivered to Condon Motors on January 23, 1976. There was no evidence, however, that the cutting torch stolen in July was the same one delivered in January. In fact, at the hearing on the motion the manager of Condon Motors testified that he sold a used cutting torch every month or two and kept only one on hand at

[ 337 ]

any given time. Thus, it is not likely that the torch stolen in July was the one delivered in January. The evidence would probably not have changed the result had a new trial been granted. Therefore the motion was properly denied. *State of Oregon v. Davis,* 192 Or 575, 235 P2d 761 (1951); *State v. Toth,* 30 Or App 285, 566 P2d 1218, *rev den* (1977).

Affirmed.