Argued January 3, affirmed June 5, 1979

# STATE OF OREGON, *Respondent,*
### *v.*
# DONALD DOUGLAS HULL et al, *Petitioners.*
## (TC 1466, CA 6728, SC 25858)

595 P2d 1240

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for petitioners. With him on the brief was Gary D. Babcock, Public Defender.

Jesse R. Himmelsbach, Jr., District Attorney, Baker, argued the cause for respondent.

LINDE, J.

**LINDE, J.**

Defendants were jointly charged with the theft of a beef animal. They were tried and convicted by the circuit court sitting without a jury. On appeal, they argued that the court should have granted their motion for acquittal on two grounds: First, that the state's case rested only on the uncorroborated testimony of persons who were accomplices to the crime charged, and second, that the state failed to prove that the animal was the property of the person named as the owner in the indictment. The Court of Appeals affirmed, 33 Or App 183, 575 P2d 1015 (1978), and we allowed review.

The testimony at the trial was that the theft occurred in the course of a deer hunting party involving four people, defendants Donald and James Hull and Robert and Laurlie Foote, and that the animal was skinned and divided between the participants at the home of Marvin Cartwright. The Footes and Cartwright were given immunity from prosecution, ORS 136.617, 136.619, and their testimony was the only evidence that connected defendants with the alleged theft.

Briefly summarized from the statement by the Court of Appeals, the testimony was that the group traveled in a jeep driven by James Hull. Donald Hull suggested that "if we can't get a deer, let's get a beef." When they came upon some grazing cattle, James slowed the jeep, and Donald got out and shot a heifer. Foote then helped Donald remove the animal's entrails. Mrs. Foote was sent down the road to signal if anyone came along. When the men had loaded the carcass into the jeep, they picked up Mrs. Foote and drove to Cartwright's home where the beef was skinned and divided with Cartwright's help, the Footes taking half and James Hull the other half.

It is undisputed that Robert Foote was an accomplice. The issue on defendants' first assignment of

error is whether both Mrs. Foote and Cartwright were also accomplices, or whether the testimony of either of them furnishes independent corroboration. The Court of Appeals concluded that the trial court did not err in holding Cartwright not to be an accomplice. It therefore did not reach the question whether Mrs. Foote was an accomplice.

The initial inquiry must be how a trial court is to decide whether a witness is an accomplice so as to require corroboration. ORS 136.440 provides:

(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission.

(2) As used in this section, an "accomplice" means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165, or, if the witness is a juvenile, has committed a delinquent act, which, if committed by an adult, would make him criminally liable for the conduct of the defendant.

ORS 161.155, referred to in ORS 136.440(2), provides that a person is "criminally liable" for another's criminal conduct if:

(2) With the intent to promote or facilitate the commission of the crime he:

(a) Solicits or commands such other person to commit the crime; or

(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

(c) Having a legal duty to prevent the commission of the crime, fails to make an effort he is legally required to make.[1]

---

[1] ORS 161.165, also referred to in ORS 136.440, excludes from the definition of accomplice victims and persons whose conduct is "necessarily incidental" to the crime.

The legislative history shows that in adopting this definition the drafters expressly addressed one problem in identifying a witness as an accomplice but apparently did not address another problem. The commentary of the Criminal Law Revision Commission recognized a "broad" definition of an accomplice as anyone who aids, encourages, or participates in the commission of the offense and a "narrow" definition, which tests the culpability of the witness under the same criminal statute as the defendant's, and it proposed to codify Oregon's adherence to the "narrow" rule. However, the commentary does not clarify to what degree of certainty this culpability of the witness as an accomplice must be shown.

This court had previously described an accomplice as one who could be "lawfully indicted" for the same offense as the defendant, *State v. Weston*, 109 Or 19, 32, 219 P 180 (1923), but on another occasion, as one who could be "indicted and *punished*" under the same statute as the defendant, *State v. Coffey*, 157 Or 457, 475, 72 P2d 35 (1937) (emphasis added). Moreover, the court early established that, whatever the test of an accomplice, if the question whether the test has been met depends on disputed facts, the defendant who insists on corroboration has the burden to meet the test by a preponderance of the evidence. *State v. Wong Si Sam*, 63 Or 266, 127 P 683 (1912). Thus it can be important which of the quoted phrases defines the test. If a witness is a putative accomplice when he or she may be charged with the same offense by indictment or information, this requires only "probable cause." *See* Or Const am art VII, § 5(5). If an accomplice is only someone who could be charged and *punished*, defendant would in effect have to prove the witness guilty of the crime with which defendant himself is charged before being able to insist on corroborating evidence.

On this question, the commentary is unhelpful. At one point it repeats the phrase "indicted and

punished," but that is in explaining the "narrow" definition mentioned above. Later it concludes:

> "The new criminal liability statutes appear to be a rational approach to the definition of who is an accomplice because if a person is criminally responsible for the conduct of another, he has participated to some degree in the offense charged and can therefore be *charged with* the same offense under ORS 161.150." Commentary, Proposed Oregon Criminal Procedure Code, Final Draft 1972 at 205. (Emphasis added.)

The minutes of the subcommittee that dealt with this issue bears out that the choice of the phrase "charged with" was deliberate. Mr. Spaulding raised the question how it would be possible to establish that the witness would be criminally liable unless and until he or she was tried and convicted. The Commission's Project Director, Donald Paillette, replied that the definition did not require a conviction to make a person criminally liable, it only set out the bases for charging the person with liability as an accomplice.

In the light of the text and this explanatory material, we conclude that the defendant's burden in demanding corroboration for the testimony of a prosecution witness is that the evidence is legally sufficient to justify an indictment of or information against the witness as an accomplice to the offense charged against the defendant, not necessarily to convict the witness of it. In a jury trial, this requires careful instructions on the factual elements that would suffice to charge the witness with being "criminally liable for the conduct of the defendant" and hence an accomplice whose testimony requires corroboration. In other words, it places the trial jury in the position of a grand jury which is asked to decide whether there is probable cause to charge the witness with the offense for which defendant is on trial, whether or not the evidence convinces them that the witness is guilty. If the jury believes there is such probable cause, then they cannot convict the defendant on the testimony of the witness

[516]

alone, without corroborative evidence. But if no facts bearing on the elements needed to charge the witness are in dispute, the issue of the potential criminal liability of the witness under ORS 161.155 is a question of law to be decided by the court. *See State v. Weston, supra,* 109 Or at 32-33.

■ The problem is more difficult when the facts are in dispute and the case is tried to the court without a jury, for then the legal assumptions about the elements that would suffice to charge the witness as an accomplice do not take the form of instructions. In such a case, there are different ways in which the record could show the basis of the court's conclusion so as not to foreclose review of this issue on appeal. One helpful way would be if the court expressed in some form its view of the facts, insofar as they are disputed. Alternatively the court might express its understanding of the elements legally needed to charge the witness as an accomplice, since these will not be recorded in the form of jury instructions. Or the court might do both. We prescribe no formal findings; what matters is only that an appellate court can perform its function on the issue whether the need for corroborative evidence was decided on the right legal premises.

■ In this case, the record is not clear on what basis the trial court concluded that the prosecution witnesses Cartwright and Mrs. Foote were not potentially chargeable with defendants' offense. With respect to Mrs. Foote, the transcript shows that the court focused its attention on her potential liability as a lookout. On this phase it may fairly be inferred that the court found her not to have the intent required for liability. However, Mrs. Foote herself testified without contradiction that she helped to get some bags to pack the beef after it was skinned and divided. The court did not mention that phase of her potential liability, so that a conclusion holding her not chargeable as an accomplice appears to rest on an erroneous legal premise as to the duration of the offense with which defendants were charged.

The other witness, Cartwright, claimed his privilege not to be a witness against himself and testified only under the compulsion of ORS 136.617. His testimony was evasive. All he admitted was that the defendants and the Footes brought a beef carcass to his place and took it into a shed to cut up, and that thereafter part of it was loaded into James Hull's station wagon and part of it into the back seat of the Footes' Ford. However, Mr. Foote testified that Cartwright stayed in the shed, and that "we all" butchered the animal. Mrs. Foote testified that Cartwright expressed dismay at seeing what defendants had brought. She further testified that Cartwright was in the shed and used a large meat saw to cut the carcass in half down the length of the backbone.

The arguments to the trial court on the question of Cartwright's liability as an accomplice dealt both with the foregoing evidence of his participation and knowledge and also with the legal question whether the theft was "complete" before he could become an accomplice to it. In ruling on this issue, the trial court stated:

"Mr. Cartwright I do not believe is an accomplice. It is true there is conflicting testimony, his own testimony would not make him an accomplice although he did testify that finally that he did see this beef and so on but not to the extent that it would indicate that he could have been joined as the defendant in this matter."

In saying this, the trial judge may well have meant that he did not believe Cartwright participated in the disposition of the beef as a matter of fact, even to the level of probable cause. Mrs. Foote testified that Cartwright helped cut the carcass, but the judge may have disbelieved her or thought she was mistaken in what she saw him cut.

The defendants assign as error only the denial of their motion for acquittal. Since the facts concerning Cartwright's participation were in doubt, we cannot

[518]

say on this record that defendants were entitled to an acquittal as a matter of law.[2]

■ Defendants also contend that they were entitled to a judgment of acquittal because the state did not prove that the animal alleged to have been stolen belonged to Ronald Doman, as alleged in the indictment, rather than possibly to one of several other ranchers. It is immaterial whose property the animal was, as long as it was the property of someone other than defendants. ORS 164.015, ORS 135.725.[3] Defendants argue that the animal might have been wild, a fact which the trial court obviously decided against them, but they do not argue that failure to charge and then to prove ownership specifically in Mr. Doman would make the charge so uncertain as to mislead them in making their defense or to subject them to being again put in jeopardy for the same offense. *See State v. Hoover,* 219 Or 288, 317, 347 P2d 69, 89 ALR2d 695 (1959); *State v. Cook,* 154 Or 62, 66-67, 59 P2d 249 (1936). We agree with the conclusion of the Court of Appeals that doubts whether the beef was proved to be that of Mr. Doman or another rancher do not require reversal.

Affirmed.

---

[2] The Court of Appeals and the parties have discussed this case on the assumption that Cartwright did participate in dividing the beef. If so, he might well be chargeable with aiding or abetting defendants in "appropriating" and "withholding" the property within the meaning of ORS 164.015(1). However, the factual assumption is left in doubt by the quoted statement of the trial court, and there was no request that the court clarify the legal or factual assumption of his ruling.

[3] ORS 135.725:

"When a crime involves the commission of or an attempt to commit a private injury and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material."