Argued and submitted September 27, 2006, at Nyssa High School, Nyssa; reversed November 7, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MICKEAL ALBERT CLUM,
*Defendant-Appellant.*

Lane County Circuit Court
210313454; A123597

171 P3d 980

John L. Susac, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Katherine Waldo, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Rolf C. Moan, Assistant Attorney General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge,* and Ortega, Judge.

BREWER, C. J.

---

* Brewer, C. J., *vice* Linder, J.

## BREWER, C. J.

Defendant appeals his conviction for failure to report as a sex offender, ORS 181.599(1)(d),[1] arguing that he had no duty to make an annual report as a sex offender because he moved to Oregon before the pertinent reporting statute, ORS 181.597(1)(a)(C),[2] was enacted. We reverse.

The parties stipulated to the following facts. In 1986, 1988, and 1990, defendant was found to be within the

---

[1] ORS 181.599 provides, in part:

"(1) A person who is required to report as a sex offender and who has knowledge of the reporting requirement commits the crime of failure to report as a sex offender if the person fails, as required by ORS 181.595, 181.596 or 181.597, to:

"(a) Make the initial report to the appropriate agency or official;

"* * * * *

"(c) Report following a change of residence, school enrollment or employment status, including enrollment, employment or vocation status at an institution of higher education;

"(d) Make an annual report; or

"(e) Provide complete and accurate information."

[2] ORS 181.597 currently provides, in part:

"(1)(a) When a person listed in subsection (2) of this section moves into this state and is not otherwise required by ORS 181.595 or 181.596 to report, the person shall report, in person, to the Department of State Police, a city police department or a county sheriff's office:

"(A) No later than 10 days after moving into this state;

"(B) Within 10 days of a change of residence; and

"(C) Once each year within 10 days of the person's birth date, regardless of whether the person changed residence.

"* * * * *

"(2) Subsection (1) of this section applies to:

"(a) A person convicted in another jurisdiction of a crime if the elements of the crime would constitute a sex crime;

"(b) A person found by a court in another jurisdiction to have committed an act while the person was under 18 years of age that would constitute a sex crime if committed in this state by an adult; and

"(c) A person required to register in another state for having committed a sex offense in that state regardless of whether the crime would constitute a sex crime in this state."

Except for changes not pertinent here, ORS 181.597 has existed in its current form since 1997. The 1995 and 1997 versions of the statute were identical as material here, except that current subsection (2)(b) was added by amendment in 1997. Or Laws 1997, ch 709, § 3. For reasons explained below, that circumstance complicates the analysis of this case. 216 Or App at 6 n 4.

jurisdiction of the juvenile court in the State of Washington for committing offenses that would constitute sex offenses under Oregon law. In 1998, 2000, and 2001, defendant reported as a sex offender in Oregon. From September 2, 2002 to June 24, 2003, defendant resided in Lane County, and he knew of Oregon's sex offender reporting requirements, but he did not report in Oregon as a sex offender.

Thereafter, the Lane County district attorney filed an information charging defendant with the crime of failure to report as a sex offender under ORS 181.599. The state's theory at trial was that defendant was required to make an annual report as a sex offender pursuant to ORS 181.597(1)(a)(C), because he had moved to and resided in Oregon after having committed offenses in Washington as a juvenile that would have constituted sex crimes in Oregon. ORS 181.597(2)(b). Consequently, the state argued, because defendant knew of the reporting requirements and failed to make an annual report, his failure to do so constituted a crime under ORS 181.599.

Defendant waived his right to a jury trial. At his bench trial, defendant asserted that he had moved to Oregon in 1994, before ORS 181.597 was enacted in 1995, and, therefore, the statute's reporting requirements did not apply to him. The parties presented conflicting evidence regarding the date of defendant's move to Oregon; defendant offered evidence that he moved to Oregon in 1994, and the state offered evidence that the move occurred in 1996. The state also argued that, regardless of when defendant moved to Oregon, the statute's annual reporting obligation applies to sex offenders who moved to Oregon before the statute was enacted.

At the conclusion of the evidentiary phase of the trial, defendant moved for a judgment of acquittal on the ground that the reporting requirements of ORS 181.597 did not apply to him because he had moved to Oregon before the statute was enacted. The trial court denied defendant's motion. As an explanation for its ruling, the court found that "defendant moved to Oregon in 1994," but the court

concluded that ORS 181.597 nonetheless required defendant to register. Accordingly, the court convicted defendant of violating ORS 181.599.

■■    On appeal, defendant argues that the trial court erred in denying his motion for a judgment of acquittal. We must initially address the state's procedural challenge to defendant's assignment of error. The state argues that the trial court could not have granted defendant's motion, because there was conflicting evidence as to whether defendant moved to Oregon before the effective date of ORS 181.597 and, in reviewing the denial of a motion for a judgment of acquittal, we review the record and all reasonable inferences that may be drawn therefrom in the light most favorable to the state to determine whether the trier of fact could have found all of the elements of the charged offenses beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). It follows, the state reasons, that the trial court's finding that defendant moved to Oregon in 1994 was effectively negated and, on appeal, this court is not bound by that finding in determining whether the trial court erred in denying the motion for judgment of acquittal. In different terms, the state's argument reduces to the proposition that, because defendant chose the wrong procedural vehicle for his challenge to the application of ORS 181.597 and, on appeal, defendant assigns error only to the denial of his procedurally improper motion, his assignment of error is defeated by the requisite standard of review, and we must affirm his conviction.

Before trial, the parties discussed the procedural method by which defendant could challenge the applicability of ORS 181.597. The state asserted that, among other possibilities, defendant could make a motion to dismiss or "some other challenge * * * to the statute, or the statute as applied to [defendant]." Defendant, observing that the indictment did not allege specific facts pertaining to the date that defendant moved to Oregon, asserted that he could not have filed a motion to dismiss. The prosecutor acknowledged that the appropriate vehicle for defendant's challenge was uncertain, and she expressed no preference as to how the matter was

presented for decision.[3] In the end, defendant made his challenge by means of a motion for a judgment of acquittal.

The state is correct that, viewed as the parties framed the issue before the trial court, a motion for a judgment of acquittal was not the proper vehicle for defendant's challenge to the application of ORS 181.597.[4] However, we reject the state's argument that, perforce, defendant's challenge cannot succeed. The disputed fact as to whether defendant moved to Oregon in 1994 or 1996 was tried to the court. In its case-in-chief, the state offered into evidence the stipulated facts that the parties submitted and several exhibits pertaining to defendant's adjudications in Washington and his previous sex offender registrations in Oregon in 1998, 2000, and 2001. One of the "sex offender registration forms" indicated that defendant had moved to Oregon in July 1996. After the state rested, defendant and his mother testified that he had moved to Oregon in 1994. Defendant then rested, and the state offered further evidence in rebuttal. Thereafter, defendant made his motion for a judgment of acquittal, in which he argued that, because he had moved to Oregon in 1994, as a matter of law, he could not have committed the

[3] The prosecutor stated:

"I think it can be, however, determined by the court regarding that factual issue for purposes of deciding how the statute applies to the defendant, because, how the statute applies to the defendant is, I mean in some ways it is a demurrer because it is basically claiming that the pleading is insufficient to prove that a crime and it is a [demurrer] as applied to the defendant. I mean there are lots of different ways that this can be handled pretrial. So it is just up to counsel how he wants to characterize it."

[4] As it happens, the disputed fact to which the parties have devoted so much attention is not material to our analysis of the merits of defendant's challenge to his conviction. That is, whether defendant moved to Oregon in 1994 or 1996 is immaterial because, if defendant committed the charged offense, he did so only under the *1997 version* of the statute. As noted, the 1997 version of ORS 181.597 first applied the statute's reporting requirements to offenders who, like defendant, had previous juvenile adjudications for sex offenses in other states. Or Laws 1997, ch 709, § 3. 216 Or App at 3 n 2. For reasons explained below, that factor is pertinent to our consideration of the 1997 legislative history of the statute. 216 Or App at 11 n 6. However, it does not dispose of the state's procedural challenge to defendant's appeal. Defendant never argued before the trial court that he was entitled to a judgment of acquittal on the ground that the factual dispute regarding when he moved to Oregon was immaterial to the statutory analysis. To the contrary, defendant took the opposite position before the trial court. His position remains the same on appeal. Accordingly, we evaluate the state's procedural argument in terms that are consistent with the parties' framing of their dispute at trial and on appeal.

charged offense. At that point, the trial court expressly found that defendant had moved to Oregon in 1994, but the court nonetheless found him guilty.

In short, the trial court made a finding of fact on a disputed issue after a full trial on the merits. The court made that finding knowing that it was the only fact in dispute between the parties and that, from defendant's point of view, it was dispositive. Defendant's motion adequately focused the court's attention on what defendant deemed to be the dispositive factual and legal issues in the case. And, in making the finding, the court was fulfilling its dual function as trier of fact and law in determining defendant's guilt of the charged offense.

Viewed as the parties have framed the issue, the state's argument presents another iteration of a familiar problem in the review of trial court rulings in bench trials. In the circumstances of this case, the ruling to which defendant assigns error is directly analogous to a ruling on an exception to an instruction in a jury trial. *See, e.g., State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (addressing preservation of challenges to jury instructions). Just as the latter is reviewable, so, too, is the former.

In *State v. Hull*, 286 Or 511, 517, 595 P2d 1240 (1979), the defendants faced a similar problem in appealing a court-tried conviction. There, the court addressed how a criminal defendant in a bench trial can obtain, and preserve for review, the trial court's determination of what elements the state must prove. In *Hull*, as in this case, the defendants assigned error to the trial court's denial of their motion for a judgment of acquittal. *Id.* at 513. The issue before the trial court required it to interpret the meaning of a statute requiring corroboration of an accomplice's testimony and to resolve certain factual disputes that bore on whether that statute applied. *Id.* at 516-17. The Supreme Court explained that, in a jury trial, the issue would involve "careful instructions on the factual elements that would suffice" to find the witness an accomplice. *Id.* at 516. The court then stated:

> "The problem is more difficult when the facts are in dispute and the case is tried to the court without a jury, for then the legal assumptions about the elements that would

suffice to charge the witness as an accomplice do not take the form of instructions. In such a case, there are different ways in which the record could show the basis of the court's conclusion so as not to foreclose review of this issue on appeal. One helpful way would be if the court expressed in some form its view of the facts, insofar as they are disputed. Alternatively the court might express its understanding of the elements legally needed to charge the witness as an accomplice, since these will not be recorded in the form of jury instructions. Or the court might do both. We prescribe no formal findings; what matters is only that an appellate court can perform its function on the issue whether the [case] was decided on the right legal premises."

*Id.* at 517.[5]

In *Hull*, the trial court failed to make a clear and unambiguous finding with respect to the factual issue that the parties disputed, and the defendants did not seek clarification of that issue. *Id.* at 519 n 2. As a consequence, the Supreme Court concluded that the trial court had not erred in denying the defendants' motion for a judgment of acquittal. *Id.* at 518-19. However, what the court in *Hull* suggested

---

[5] Our decision in *State v. Andrews*, 174 Or App 354, 27 P3d 137 (2001), is consistent with both *Hull* and our conclusion in this case. *Andrews* involved a trial to a court in which the court convicted the defendant for carrying a loaded firearm in violation of a city ordinance. A central issue at trial concerned the elements that the state had to prove to convict the defendant of the crime. The defendant moved for a judgment of acquittal arguing, among other things, that for the defendant to be convicted of a crime for knowingly engaging in the conduct proscribed by the pertinent city ordinance, the state must prove her *scienter* not only with respect to carrying the firearm but also with respect to the fact that the firearm was loaded, and that the state had failed to do so. The trial court denied the motion, stating, " '[A]t least there is some evidence to show that she could have had knowledge of the status of it being loaded.' " *Andrews*, 174 Or App at 357 (brackets in original).

In announcing its decision to convict the defendant, the trial court stated that it agreed with the state's position on the elements of the crime, thereby rejecting the defendant's contrary position. Relying on *Hull*, we held on appeal that the trial court's statement constituted a ruling on that issue equivalent to a ruling on a disputed jury instruction in a case tried to a jury. We stated:

"Here, in closing argument, defendant raised the precise matter now disputed on appeal—whether the state must prove a culpable mental state with respect to the 'loadedness' element in PCC 14.32.010(C). The trial court expressly decided that question. * * * That ruling constituted a clear expression of the trial court's 'understanding of the elements needed' for the state to convict defendant under PCC 14.32.010(C). *Hull*, 286 Or at 517. Accordingly, defendant's challenge to that ruling is reviewable on appeal."

*Andrews*, 174 Or App at 359.

would be permissible is exactly what occurred in this case. After hearing all of the evidence, the trial court expressed its view of the disputed fact, finding that defendant moved to Oregon in 1994. As part and parcel of its decision, the court applied its understanding of the elements of ORS 181.597 to that finding. Consequently, we are able to perform our reviewing function on appeal to determine whether the trial court correctly applied the elements legally required to convict defendant, which, in this case, depends on the court's legal conclusion that the reporting requirement applied to defendant. Accordingly, we turn to the merits of defendant's challenge to that conclusion.

■  ORS 181.599 criminalizes failure to report as a sex offender if the offender is required to report and knows that he or she is required to report. ORS 181.595, ORS 181.596, and ORS 181.597 identify persons who are required to report as sex offenders. In this case, the state relies solely on ORS 181.597, which, as discussed, provides, in part:

"(1)(a)  When a person listed in subsection (2) of this section moves into this state and is not otherwise required by ORS 181.595 or 181.596 to report, the person shall report, in person, to the Department of State Police, a city police department or a county sheriff's office:

"(A)  No later than 10 days after moving into this state;

"(B)  Within 10 days of a change of residence; and

"(C)  Once each year within 10 days of the person's birth date, regardless of whether the person changed residence.

"* * * * *

"(2)  Subsection (1) of this section applies to:

"(a)  A person convicted in another jurisdiction of a crime if the elements of the crime would constitute a sex crime;

"(b)  A person found by a court in another jurisdiction to have committed an act while the person was under 18 years of age that would constitute a sex crime if committed in this state by an adult; and

"(c) A person required to register in another state for having committed a sex offense in that state regardless of whether the crime would constitute a sex crime in this state."

The pivotal issue in this case is whether the phrase in subsection (1)(a) "[w]hen a person listed in subsection (2) * * * moves into this state," includes a person who moved to Oregon before ORS 181.597 was enacted, or, more precisely, before it was amended in 1997 to add current subsection (2)(b). To make that determination, we first consider the statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Defendant argues that the three reporting statutes, ORS 181.595, ORS 181.596, and ORS 181.597, all utilize a similar scheme "for defining who and under what circumstances a person must report as a sex offender." Defendant argues that a person must fall within the class of persons who potentially are subject to the reporting requirement and that the person must trigger the requirement to report.

■ According to defendant, under ORS 181.597, the class of persons required to report is defined by subsection (2), and the triggering event is "[w]hen a person * * * moves into this state * * *." Even though he fell within the class of persons required to report, defendant argues that he never triggered the reporting requirement, because he did not "move" into Oregon after the statute was enacted.

We agree with defendant that the verb tense used in ORS 181.597 is indicative of the legislature's intent. The statute uses different verb tenses in setting out the list of sex offenders required to register in subsection (2) and in describing the triggering event for requiring registration in subsection (1). Subsection (2) identifies those who must register as persons "convicted" in another jurisdiction of a sex crime, "found" in another jurisdiction to have committed a sex crime while still juveniles, and "required" to register as sex offenders in another state. Thus, the class of persons who must register includes those whose adjudications have already occurred and could have occurred before the statute's enactment.

However, the statute is not framed in the past tense in indicating *when* the listed class of persons must report. Paragraph (1)(a) provides that, "[w]hen a person listed in subsection (2) * * * *moves* into this state * * *," he or she must perform the reporting obligations set out in subparagraphs (1)(a)(A) to (C). (Emphasis added.) If the legislature had intended for the statute to encompass persons who moved to Oregon before its enactment, its use of the past tense in other parts of the statute indicates that it similarly could—and probably would—have used the past tense to encompass such persons. In *Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994), the court stated, "[W]e do not lightly disregard the legislature's choice of verb tense, because we assume that the legislature's choice is purposeful. In most cases, we best effectuate the legislative intention by giving effect to the plain, natural, and ordinary meaning of the verb tense chosen by the legislature." In short, the fact that the legislature used the present-tense verb, "moves," in paragraph (1)(a) indicates that it intended for the act of moving to Oregon to trigger the reporting requirements set out in the ensuing subparagraphs of that paragraph. Thus, persons who already resided in Oregon before the enactment of ORS 181.597 would not be subject to its reporting requirements.

ORS 181.595 (1995) and ORS 181.596 (1995), which provide context for ORS 181.597, support that interpretation.[6] In 1995, when ORS 181.597 was enacted, ORS 181.595 (1995), and ORS 181.596 (1995) listed categories of persons who were required to report as sex offenders and set out the triggering events for those reporting requirements. Under ORS 181.595(1)(a)(A) (1995), that list included a person on supervised or conditional release who

"was confined [in a correctional or detention facility in Oregon] as a result of:

"(i)   Conviction of a sex crime;

---

[6] ORS 181.595 (1995) was amended by Or Laws 1997, ch 538, § 3; Or Laws 1997, ch 709, § 1; Or Laws 1999, ch 626, § 3; Or Laws 2001, ch 884, § 1; and Or Laws 2005, ch 567, § 6. ORS 181.596 (1995) was amended by Or Laws 1997, ch 538, § 4; Or Laws 1997, ch 709, § 2; Or Laws 1997, ch 727, § 13; Or Laws 1999, ch 626, § 4; Or Laws 2001, ch 884, § 1; and Or Laws 2005, ch 567, § 7.

"(ii)    Having been found guilty except for insanity of a sex crime; or

"(iii)    Having been found to be within the jurisdiction of the juvenile court for having committed a crime that if committed by an adult would constitute a sex crime[.]"

Under ORS 181.596(1)(a) (1995), that list included a person released on probation "after being convicted in this state of a sex crime," "after being found to be within the jurisdiction of the juvenile court for having committed an act that if committed by an adult would constitute a sex crime," or "after being convicted in another jurisdiction of a crime that would constitute a sex crime if committed" in Oregon.

Conversely, both statutes were phrased in the present tense in describing the events that would trigger a person's reporting obligation. Under ORS 181.595(1)(a) (1995), the sex offender's supervisor was to enter the offender's information into the Law Enforcement Data System (LEDS) system *"when* the person * * * [i]s discharged, paroled or released" from an Oregon correctional facility or "[i]s paroled to" Oregon after conviction in another jurisdiction. (Emphasis added.) ORS 181.596 (1995) required a sex offender's probation agency to enter the offender's information into the LEDS system *"when* the person *is* released on probation." (Emphasis added.) In addition, both statutes required the sex offenders themselves to comply with specified reporting requirements *"[f]ollowing* discharge, release from active parole or other supervised or conditional release." ORS 181.595(2) (1995); ORS 181.596(3) (1995) (emphasis added).

In *State v. Driver/Collins*, 143 Or App 17, 22, 923 P2d 1272, *rev den*, 324 Or 395 (1996), this court interpreted *former* ORS 181.518 (1989), *renumbered as* ORS 181.595 (1995), to provide:

"If the offender was released before the law became effective in 1989, there was no duty under this statute to enter information concerning the offender into the LEDS, and there was, therefore, no corresponding obligation for the offender to update that information after discharge from supervised release."

In other words, the court construed the words "[w]hen a person is discharged, paroled or released" to be the triggering event and, if the defendant had been discharged from supervised release before the statute's enactment, he or she would not be subject to that trigger. *Id.* Thus, read in context with ORS 181.595 and ORS 181.596 and case law construing those statutes, the legislature's choice of tenses in ORS 181.597(1)(a) supports the conclusion that the statute's reporting obligations do not apply to persons who moved to Oregon before the statute's enactment.

The state remonstrates that it is not logical to treat the phrase "[w]hen a person * * * moves into this state" as a triggering event for the annual reporting requirement set out in subparagraph (1)(a)(C), because the statute "cannot literally require a person to report once each year *when* (that is, at the same time) he 'moves into this state.' " (Emphasis in original.) That argument, however, takes a logically unsound view of the statute's structure. The text and structure of paragraph (1)(a) is cohesive. In ordinary terms, it provides that, once a person who is a member of one of the categories listed in subsection (2) moves to Oregon, he or she becomes subject to each of the three reporting requirements set out in subparagraphs (1)(a)(A) to (C).

The state also asserts that to interpret the statute so as to exclude persons who moved to Oregon before the enactment of ORS 181.597(2)(b) from the annual reporting requirement of subparagraph (1)(a)(C) runs contrary to the legislature's declaration in ORS 181.602 that "[t]he purpose of ORS 181.594 to 181.601 is to assist law enforcement agencies in preventing future sex offenses." There is nothing inconsistent, however, between that broad statement of policy and the specific means by which the legislature chose to execute that policy in ORS 181.597. A practical illustration makes the point. Under the state's view of the statute, a person who committed a sex offense in another state in 1953 and moved to Oregon in 1955 would be required to file annual sex offender reports in Oregon after 1995, even if he or she had been a crime-free resident of this state for the previous 40 years. It is not unreasonable to infer that the legislature

intended to more strategically target the problem of deterring sexual predators from surreptitiously moving to Oregon and reoffending here.

■      If resort to legislative history were necessary to resolve the issue, that history supports our construction of ORS 181.597. As discussed, in 1997 the legislature amended the statute to encompass among the list of reporting offenders persons, like defendant, with previous juvenile sex offense adjudications in other states. *See* ORS 181.597(2)(b). Ragon, an Oregon State Police detective and the manager of Oregon's Sex Offender Registration Program, testified in support of the amendment before the Senate Crime and Corrections Committee. During his testimony, Senators Trow and Hamby asked Ragon the very question before us. Ragon replied, "If you lived, if you came to the state on September 8, 1995 [the day before ORS 181.597 became effective], you do not have to register; that was the opinion that we were given by the Attorney General." Tape Recording, Senate Crime and Corrections Committee, SB 978, Apr 14, 1997, Tape 70, Side B (statement of James Ragon). Ragon expressed uncertainty about whether the 1997 amendment would have the same effect, and Senator Hamby observed that the legislature rarely enacts "retroactive" legislation. Those statements support our reading of the statute.[7]

In sum, we conclude that the annual sex offender reporting requirement of ORS 181.597(1)(a)(C) does not

---

[7] Statements made by the 1997 legislature are not determinative of the intent of the 1995 legislature in enacting ORS 181.597. *See, e.g., DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) ("The views legislators have of existing law may shed light on a new enactment, but [are] of no weight in interpreting a law enacted by their predecessors."); *Salem-Keizer Assn. v. Salem-Keizer Sch. Dist. 24J*, 186 Or App 19, 26, 61 P3d 970 (2003) (subsequent statements "are not probative of the intent of statutes already in effect" (internal quotation marks and citation omitted)). However, the intent of the 1997 legislature is pertinent here, where, but for the amendment to the statute that that body enacted, defendant could not be convicted of violating ORS 181.599. In other words, because the 1997 legislature is the body, if any, that criminalized defendant's conduct, its amendment of ORS 181.597 was a "new enactment" for that purpose, and its understanding of the triggering events for the reporting obligations of former juvenile offenders is pertinent to the issue at hand. *See DeFazio*, 296 Or at 561; *cf. Steelman-Duff, Inc. v. Dept. of Transportation*, 323 Or 220, 231 n 7, 915 P2d 958 (1996) (where the legislature did not change operative provision of statute by subsequent amendment, pertinent legislative intent pertaining to provision is that of original enacting body, not later amending body).

apply to persons who, like defendant, moved to Oregon before the statute was enacted or amended so as to apply to such persons. It follows that the court erred in convicting defendant of the charged offense.

Reversed.