714 September 5, 2024 No. 629

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHAWN VINCENT,
aka Dutch McKenzie,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR58755; A177705

Heidi H. Moawad, Judge.

Argued and submitted September 18, 2023.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

After the victim refused to let defendant's girlfriend merge into his lane on Interstate 5, defendant stood up through the sunroof of the car she was driving and fired several gunshots at the victim. For that conduct, a jury found defendant guilty of attempted second-degree murder with a firearm (Count 1), ORS 163.115; attempted first-degree assault with a firearm (Count 2), ORS 163.185; and unlawful use of a weapon with a firearm (Count 3), ORS 166.220.[1]

On appeal, defendant raises four assignments of error. In his first, he contends that the trial court erred when it declined to instruct the jury that his girlfriend, Bratcher, was an accomplice witness as a matter of law such that her testimony must be corroborated and viewed with distrust. In his second through fourth assignments, he contends that the trial court erred in denying his motion for judgment of acquittal on all three counts because, in his view, there was insufficient evidence to corroborate Bratcher's testimony identifying him as the shooter. We conclude that the evidence did not establish as a matter of law that Bratcher was an accomplice and that the trial court therefore correctly submitted the issue to the jury. We further conclude that the state was not required to corroborate Bratcher's testimony and that it presented sufficient evidence to support the guilty verdicts on all counts. We therefore affirm.

## FACTS

The victim, Evans, testified that he was driving to work early one afternoon through Portland and noticed a silver Cadillac driving aggressively. A woman was driving the Cadillac, and a man was in the front passenger seat. As Evans crossed the Marquam Bridge, the Cadillac came up behind him, "pretty fast on [his] bumper." Evans pumped his brakes and signaled to the Cadillac to back off. The Cadillac tried to pass Evans on the right to merge in front of him, but Evans did not allow it to merge and instead "flipped [them] off." The Cadillac then cut over behind Evans, sped up, passed him on the left, and got about 300 to 400 feet

---

[1] The trial court merged the verdicts on Counts 2 and 3 with the verdict on Count 1.

in front of him as they drove uphill. The male passenger stood up through the sunroof with a gun and shot several bullets at Evans. Multiple shots hit Evans's car, and two of the bullets entered through the front windshield, narrowly missing Evans but shattering both driver-side windows. The Cadillac sped away, and Evans exited the freeway and called police. He believed that the Cadillac had sped up ahead of him to get into a better position to shoot down at him. Evans acknowledged that he "d[id]n't know what's going on in their head," but believed that "they had known that they had been in the wrong, clearly, and were trying to get away from witnesses and/or police."

An eyewitness testified that he was driving on I-5 just behind the Cadillac when the shooting occurred. He described the shooter as a slim Caucasian man with very short hair or a shaved head. The eyewitness took a photograph of the Cadillac as it sped away, which he gave to police along with pinpointing on a map where the shooting had occurred. An officer later recovered four shell casings and two deformed bullets from the freeway shoulder near the Ross Island Bridge.

Portland Police Detective Brent Christiansen led the investigation into the shooting. He testified that he ran the license plate shown in the eyewitness's photograph through the Department of Motor Vehicles (DMV) database and learned that Bratcher was the Cadillac's registered owner. Christiansen also learned that defendant was one of Bratcher's "associates," and defendant's DMV photo matched the general description of the shooter. When Christiansen spoke with Bratcher about a month after the shooting, she told him that she had been driving the Cadillac and had fled the scene after the shooting. Christiansen ruled out Bratcher as an accomplice because she was cooperative and her statements correlated with details that Evans had provided. Christiansen did not threaten to charge Bratcher as an accomplice if she did not identify defendant as the shooter or coerce her into making statements inculpating defendant.

The state presented recordings of phone calls between defendant and Bratcher leading up to her grand

jury and trial testimony. In those calls, defendant told Bratcher, "don't be around when they try and serve a subpoena"; told her that "if the main witness doesn't come" he would "get out" and that she would "put the nail in the coffin" if she showed up at trial; and threatened, "If you fuck me over, I'm not fucking with them kids no more either."

Bratcher did not want to testify at trial, would not have testified if the state had not subpoenaed her, and responded with reluctance and, at times, hostility to the prosecutor's questions. She also struggled emotionally during her testimony; at one point she broke down and left the courtroom; and when she identified defendant as the shooter, she cried, apologized, and told defendant she loved him. Bratcher testified that at the time of the incident defendant was her boyfriend and they lived together with her two children, whom defendant helped raise. Bratcher acknowledged that she knew that defendant frequently carried a gun. She testified that defendant was in the front passenger seat of her Cadillac and her two young children were in the backseat when Evans cut her off on the highway, flipped them off, and swore at her out his window. According to Bratcher, she moved to the slow lane to let Evans pass them, but defendant was "pissed off" and told Bratcher to speed up. She testified that defendant then stood up through the sunroof and shot at Evans. According to her testimony, when she later spoke to Christiansen about the incident, he did not threaten to charge her as an accomplice if she did not identify defendant. She acknowledged that she had not been charged with any crime related to the incident.

After the state rested, defendant moved for a judgment of acquittal on all three counts. He argued that Bratcher was an accomplice as a matter of law and that the state had failed to adduce sufficient evidence to corroborate her testimony. The trial court denied the motion. Defendant then recalled Bratcher to the witness stand, and she testified that someone from the district attorney's office had threatened her with seven-and-a-half years in prison for her involvement in the shooting.

After defendant rested, the trial court ruled that it would give the accomplice witness jury instructions that

defendant had previously requested. *See* Uniform Criminal Jury Instruction (UCrJI) 1054 (defining "accomplice"); UCrJI 1055 (instructing that the defendant has the burden to prove by a preponderance that a witness is an accomplice); UCrJI 1056 (instructing that accomplice witness testimony must be corroborated); UCrJI 1057 (instructing that accomplice witness testimony should be viewed with distrust). The court explained that there was "sufficient evidence on the record to put [the question of whether Bratcher was an accomplice] to the trier of fact," including Evans's opinion that the Cadillac sped up to get a better shot and Bratcher's testimony that she knew defendant carried a gun and that she sped away after the shooting. Defendant then moved the court to find that Bratcher was an accomplice as a matter of law and to instruct the jury accordingly. *See* UCrJI 1058(2) ("You are instructed as a matter of law that ___ is an accomplice in the commission of the crime of [*crime with which defendant is charged*]."). The court declined to do so, agreeing with the state that the issue was in dispute and explaining that Bratcher's testimony that she was threatened with potential prosecution did not make her an accomplice as a matter of law.

The trial court delivered the accomplice jury instructions that placed the burden on defendant to prove that Bratcher was an accomplice. The jury convicted defendant on all three counts, and this appeal followed.

## ANALYSIS

The testimony of an accomplice has long been viewed with suspicion in Oregon. *See* Frank E. Nash, *Criminal Law—Evidence—Accomplice's Testimony*, 17 Or L Rev 118 (1938) (discussing the origins of the common-law rule regarding accomplice witness testimony and noting that the Oregon legislature first enacted a statute adopting that rule of evidence in 1864). That suspicion arises from a general concern about the veracity of a witness who has admitted to committing a crime and a specific concern that an accomplice might be induced by promises of leniency or immunity to testify falsely against the defendant. *State v. Oatney*, 335 Or 276, 283, 66 P3d 475 (2003). Accordingly, ORS 136.440 provides that a defendant cannot be convicted solely by the

testimony of an accomplice witness and defines an accomplice as "a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 [criminal liability for conduct of another] and 161.165 [exceptions]."

"[A] person is an 'accomplice' for purposes of the corroboration requirement if 'the evidence is legally sufficient to justify an indictment of or information against a witness as an accomplice to the offense charged against the defendant, not necessarily to convict the witness of it.'" *Oatney*, 335 Or at 284 (quoting *State v. Hull*, 286 Or 511, 516, 595 P2d 1240 (1979)). The standard "is not whether there is sufficient evidence to convict the witness of being an accomplice of the defendant, but whether there is probable cause to *charge* the witness with the offense for which the defendant is on trial." *Id.* (emphasis in *Oatney*; internal quotation marks, citation, and brackets omitted); *see also State v. Miranda*, 290 Or App 741, 745, 417 P3d 480 (2018) (explaining that there is sufficient evidence to support a finding of probable cause to charge the witness with the offense for which the defendant is on trial if "there is a substantial objective basis for believing that, more likely than not," that offense was committed and the witness aided or abetted in its commission).

Here, the parties agree that Bratcher was an accomplice witness only if she intended to promote or facilitate commission of the shooting. *See* ORS 161.155. Their dispute concerns whether the trial court was required to find that Bratcher was an accomplice as a matter of law, as defendant contends, or whether, as the state argues, the trial court correctly put the issue to the jury.

Where there is a factual dispute as to whether a witness was an accomplice, the jury decides the issue. *Oatney*, 335 Or at 284-85. A factual dispute exists if the facts themselves are in dispute or if the undisputed facts do not conclusively establish the issue. *State v. Carr*, 28 Or 389, 395-96, 42 P 215 (1895) ("[W]here there is any conflict in the testimony as to whether a witness is or is not an accomplice, the issue must be submitted to the jury, under proper instructions of the court; but where the facts are all admitted, *and no issue thereon is raised by the evidence*, it then becomes a question

of law for the court as to the effect of the uncontradicted testimony." (Emphasis added.)). When the issue is put to the jury, "it places the trial jury in the position of a grand jury which is asked to decide whether there is probable cause to charge the witness with the offense for which [the] defendant is on trial, whether or not the evidence convinces them that the witness is guilty." *Hull*, 286 Or at 516.

By contrast, "if no facts bearing on the elements needed to charge the witness are in dispute, the issue of the potential criminal liability of the witness under ORS 161.155 is a question of law to be decided by the court." *Id.* at 517. That is because the submission of the question to the jury under such circumstances is "equivalent to allowing them to decide, in effect, whether the statute [requiring corroboration] should be enforced or suspended." *Carr*, 28 Or at 398.

The trial court should determine that a witness is an accomplice as a matter of law and instruct the jury accordingly when the witness testimony amounts to an outright admission to the crime for which the defendant is charged. *E.g.*, *Oatney*, 335 Or at 288-89 (witness was an accomplice as a matter of law where the witness testified that he and the defendant had committed the charged crimes together, even though the defendant's theory was that the witness acted alone); *State v. Gowin*, 241 Or 544, 547, 407 P2d 631 (1965) ("When a witness for the state testifies he knowingly and voluntarily assists a person in the commission of a crime, it then becomes the duty of the trial court to instruct the jury that such witness is an accomplice and his evidence must be corroborated as required by" statute.).

A trial court should also determine that a witness is an accomplice as a matter of law when the state charges the witness with the same crime for which the defendant is charged and the witness's testimony inculpates the defendant. *E.g.*, *State v. Simson*, 308 Or 102, 109-10, 775 P2d 837 (1989) (it was error to instruct the jury that three witnesses were accomplices as a matter of law where the witnesses had been charged and convicted of the same offense as the defendant but their testimony did not inculpate the defendant, because the instruction cast doubt on their favorable

testimony and "effectively instructed the jury that the crime was in fact committed"); *State v. Parkerson*, 310 Or App 271, 278, 484 P3d 356 (2021), *rev den*, 369 Or 505 (2022) (a witness was an accomplice as a matter of law where the witness was charged with the same crimes as the defendant, even though the charges were dropped by mutual agreement with the state, because "a grand jury *** found probable cause to indict" the witness); *State v. Torres*, 207 Or App 355, 363, 142 P3d 99 (2006) (a witness was an accomplice as a matter of law where the witness was indicted for the same crimes as the defendant, even though the witness had been acquitted).

Finally, the court should determine that a witness is an accomplice as a matter of law when the undisputed facts compel the conclusion that the witness is an accomplice. *E.g.*, *Carr*, 28 Or at 396 (a witness was an accomplice as a matter of law where "there was no conflict in the evidence or issue raised thereby as to the capacity or knowledge of [the witness], or the part she took in the commission of the crime" such that "the question presented was purely one of law, and not of fact" given "there can be no escape from the conclusion that on this record she was an accomplice of the defendant"); *State v. Fitzgerald*, 14 Or App 361, 367-68, 513 P2d 817 (1973) (a witness was an accomplice as a matter of law where his testimony that he passed a hacksaw blade back and forth between the defendant and another inmate "amounted to aiding and abetting the attempted escape"; although there was no direct evidence of the witness's mental state, "the only inference that can be drawn from his acts *** is that he did intend to promote or facilitate the planned crimes").

None of those circumstances is present here. First, Bratcher's testimony did not implicate her in the shooting as a matter of law because she did not outright admit that she intended to help defendant commit the shooting. Second, the state did not charge Bratcher with any crime, let alone any of the crimes for which defendant was charged. Even if someone at the district attorney's office threatened to charge Bratcher as an accomplice, as Bratcher testified and which the jury was free to disbelieve, that would not establish as a

matter of law that a grand jury would have found probable cause to do so.

Third and finally, we agree with the state and the trial court that the evidence did not compel a conclusion that Bratcher was an accomplice. To be sure, a jury reasonably could have concluded that there was probable cause to charge Bratcher as an accomplice to the shooting; the jury could have found that there was a substantial objective basis to believe that Bratcher more likely than not intended to help defendant commit the shooting based on the evidence that she knew defendant frequently carried a gun, that she drove in a manner that facilitated the shooting, and that she fled the scene afterwards. But the jury could also have found that there was not probable cause to charge her as an accomplice to the shooting based on that same evidence, because it also supports contrary factual findings, *viz.*, that she did not know defendant was carrying a gun at the time, that she sped up because he told her to, and that she sped away because she was scared. *Cf. State v. Broadsword*, 32 Or App 331, 337, 574 P2d 670, *rev den*, 282 Or 537, *cert den*, 439 US 870 (1978) (a witness was not an accomplice as a matter of law when there was evidence from which the jury could have inferred that the witness agreed to facilitate the charged robbery, but those "were not the only inferences which could have been drawn from the evidence").

In urging a different result, defendant contends that the instruction he requested is a statutory instruction that must be given "on all proper occasions" under ORS 10.095 and that, under *State v. Payne*, 366 Or 588, 468 P3d 445 (2020), we must view the evidence and draw all reasonable inferences in his favor as the party requesting the instruction. In defendant's view, "[t]he evidence in this case was sufficient to establish that Bratcher could have been charged as an accomplice, and that is all the record needs to show to declare a witness an accomplice as a matter of law." We disagree with the underlying premise of defendant's argument.

As noted above, it is well established under Oregon law that the trial court should determine that a witness is an accomplice as a matter of law—and thereby take the issue

away from the jury—only when "no facts bearing on the elements needed to charge the witness are in dispute." *Hull*, 286 Or at 517. That is consistent with ORS 10.095(4), which provides that the jury is "to be instructed by the court on all proper occasions * * * [t]hat the testimony of an accomplice ought to be viewed with distrust." ORS 10.095(4) does not provide that a court should instruct the jury that a *specific* witness is an accomplice as a matter of law or that the jury ought to view a *specific* witness's testimony with distrust. To the extent ORS 136.440 and ORS 10.095(4) together require the court to do so, a "proper occasion" to do so is when there is no factual dispute bearing on the elements needed to charge the witness as an accomplice, not when the evidence raises a factual issue for the jury.

*Payne* is consistent with our understanding of the appropriate role of the trial court and the jury in determining whether a witness is an accomplice. In *Payne*, the defendant requested the uniform witness-false-in-part instruction based on ORS 10.095(3), which provides that the jury is "to be instructed by the court on all proper occasions * * * [t]hat a witness false in one part of the testimony of the witness may be distrusted in others." 366 Or at 592-93. Crucially, the uniform instruction the defendant requested in *Payne* did not instruct the jury that a specific witness had intentionally lied in part of their testimony or that it was required to distrust other portions of a specific witness's testimony. *Id*. ("In support of his request, defense counsel argued that the uniform instruction did not direct the jury to conclude that any witness had lied and instead offered guidance.") Rather, the requested uniform instruction stated that "if you [the jury] find that a witness has intentionally lied in part of [their] testimony, you may, but are not required to, distrust other portions of that witness's testimony." *Id*. The court held that "a 'proper occasion' to give that statutory witness-false-in-part instruction exists when, considering the testimony and other evidence viewed in the light most favorable to the party requesting the instruction, the trial court concludes that sufficient evidence exists *for the jury to decide* that at least one witness consciously testified falsely and that the false testimony concerns a material issue." *Id*. at 607 (quoting ORS 10.095; emphasis

added). In further concluding that the failure to give the instruction warranted reversal, the court emphasized that the witness-false-in-part instruction "serves an important advisory function because it informs a jury of its duty to scrutinize a witness's testimony \*\*\* and *permits the jury to draw an inference* that a willfully false witness who has violated [their] oath in one particular may well have done so in others." *Id.* at 610 (emphasis added).

As we have acknowledged and the trial court ruled, there was sufficient evidence here to instruct the jury that an accomplice witness's testimony must be corroborated and should be viewed with distrust while leaving it to the jury to decide whether Bratcher was an accomplice. ORS 10.095(4) and *Payne* do not advance defendant's position.

We therefore conclude that the trial court did not err in failing to instruct the jury that Bratcher was an accomplice witness as a matter of law. We further conclude that the state was not required to corroborate Bratcher's testimony under ORS 163.440 and that it presented sufficient evidence to support the guilty verdicts on all counts.

Affirmed.