719

Argued and submitted May 30, affirmed October 18, 2006

STATE OF OREGON,
*Respondent,*

*v.*

BRANDON GUY BLACK,
*Appellant.*

01CR1974FE; A123729

145 P3d 367

Ernest G. Lannet, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Attorney-In-Charge, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega,* Judges.

SCHUMAN, J.

---

* Ortega, J., *vice* Richardson, S. J.

## SCHUMAN, J.

Defendant appeals from a judgment of conviction for theft in the first degree, ORS 164.055, assigning error to the trial court's refusal to instruct the jury that two of the witnesses were defendant's accomplices. Such instructions would have told the jurors that accomplice testimony should be viewed with distrust and that it cannot be used to convict a defendant unless corroborated. *See* ORS 10.095(4); ORS 136.440(1) (so providing). We conclude that the court erred, but that the court's error was harmless. We therefore affirm.[1]

In reviewing the trial court's refusal to give a requested instruction, we view the record in the light most favorable to establishment of the facts necessary to require that instruction. *Carter v. Mote*, 285 Or 275, 279, 590 P2d 1214 (1979). In that light, the facts are as follows. On July 31, 2001, while her father, the parent with whom she lived, was out of town, Bryan, 17, hosted a party. As sometimes happens, word of the party circulated locally and a number of uninvited "guests" arrived, including defendant. Also among the attendees were Carleton, Flemming, and Murray, all of whom arrived together in Carleton's car. As the evening progressed, the attendees, who had gained access to the host's father's liquor cabinet, became intoxicated, and the party became increasingly unruly. Carleton, Flemming, and defendant were observed making repeated exits and entrances. At one point, Carleton saw Flemming and defendant taking items, which Carleton knew to be stolen, including a laptop computer, from the house to Carleton's car.

Later in the evening, Carleton drove Flemming, defendant, and Murray to the Murray house. En route, Flemming told Carleton to drive faster because there were stolen items in the car. Upon arrival, the others observed Flemming unload the stolen items from the car into Murray's house. Defendant then made a phone call to arrange for a ride home and, approximately a half hour later, he left.

[1] Defendant also argues that the trial court erred in imposing restitution based on facts not found by a jury. After he filed his brief, we decided that issue contrary to defendant's position. *State v. McMillan*, 199 Or App 398, 111 P3d 1136 (2005).

The next morning, Bryan noticed that some of her family's possessions were missing and tried to get them back from Flemming, without success. Police were contacted and they interviewed some of the party guests, including Flemming, who was later arrested. He implicated defendant, who was then arrested as well.

At defendant's trial, Carleton first testified that she had not seen defendant engaging in any criminal activity, but, after a one-week recess, she was recalled and stated that her earlier testimony was false. She now testified that she saw Flemming and defendant carry items from the Bryan house to her car, overheard Flemming and defendant talking about what they had stolen, and observed Flemming and defendant unload the stolen items.

Murray also testified. She stated that, although she did not see anybody taking items from the Bryan house, she did notice that, when the items were unloaded at her house, she recognized the laptop computer as one she had seen earlier in Bryan's bedroom. She also testified that Flemming told her that he and defendant had stolen items from the Bryan house together. The state also introduced Murray's testimony to the grand jury that she saw Flemming and defendant unload stolen items from Carleton's car into her house.

At the close of evidence, defendant asked the court to instruct the jury regarding accomplice testimony with respect to both Carleton and Murray. The requested instructions—Uniform Criminal Jury Instructions numbers 1053 through 1056—were as follows:

"A witness is an accomplice witness if she could be charged with the same crime as that with which the defendant is charged. Therefore, under the circumstances of this case, [Carleton or Murray] is an accomplice witness if she could be charged with either:

"(1) Committing the crime of theft in the first degree, alleged to have been committed on or about July 31, 2001; or

"(2) Aiding or abetting another person in committing that crime.

"To determine if [Carleton or Murray] could be charged with this crime, you must decide, based on the evidence received at this trial, whether there is a substantial objective basis for believing that more likely than not [Carleton or Murray] either committed that crime or aided and abetted another person committing the crime.

"* * * * *

"The testimony of an accomplice in and of itself is not sufficient to support a conviction. There must be in addition some evidence other than the testimony of an accomplice that tends to connect the defendant with the commission of the crime.

"This other evidence, or corroboration, need not be sufficient by itself to support a conviction but it must tend to show something more than just that a crime was committed. It must also connect or tend to connect the defendant with the commission of the crime.

"If you determine that a witness was an accomplice witness, then you should view that accomplice witness's testimony with distrust."

The court denied defendant's request to give those instructions.

■ A trial court commits legal error if it refuses to give a requested instruction that supports a defendant's theory of the case if the instruction correctly states the law and if there is evidence in the record to support the instruction, viewing the record (as noted above) in the light most favorable to the defendant. *State v. Barnes*, 329 Or 327, 334, 986 P2d 1160 (1999); *State v. Lockwood*, 43 Or App 639, 644, 603 P2d 1231 (1979). Defendant's theory of the case, as presented to the jury, was that, although he rode to the Murray house with Flemming and Carleton, he did not participate in the theft. The parties do not dispute that the instructions correctly state the law. The disputed question, then, is whether there is sufficient evidence to establish that Carleton or Murray was an accomplice witness.

■ An accomplice witness is "a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under

ORS 161.155." ORS 136.440(2). ORS 161.155 imposes criminal liability on a person for the conduct of another if, as relevant here, the person aids or abets the other person in committing the crime. ORS 161.155(2)(b). When a jury is called on to determine whether a witness "is criminally liable for the conduct of the defendant," the jury is

> "in the position of a grand jury which is asked to decide whether there is probable cause to charge the witness with the offense for which defendant is on trial, whether or not the evidence convinces them that the witness is guilty."

*State v. Hull*, 286 Or 511, 515-16, 595 P2d 1240 (1979). Our task, then, is to decide whether there is a substantial objective basis for believing that, more likely than not, an offense has been committed and either Carleton or Murray aided or abetted in its commission. ORS 131.005(11) (defining "probable cause").

We conclude that such probable cause exists with respect to Carleton. The evidence, viewed under our standard of review, shows that she saw defendant and Flemming carry items she knew to be stolen out of the Bryan house and put them in her car, and that she drove defendant and Flemming (along with the stolen property) away from the house in that car. Those acts suffice to create probable cause to believe that she aided and abetted in the commission of the crime.

■ The question is somewhat more complex with respect to Murray. The only evidence linking her to the crime is the fact that she attended the party where the theft occurred, rode in a car with defendant and Flemming, and may have learned of the crime after it occurred when she saw items being unloaded at her house. On that evidence, it is a close question whether she could have been indicted for the crime of which defendant was convicted. However, we need not decide that issue. Even if she could have been indicted and therefore could have been considered an accomplice, thereby leading to the conclusion that the trial court erred in not giving the requested instruction with respect to her as well as with respect to Carleton, the errors were harmless.

■ We must affirm the trial court's verdict despite error if there is little likelihood that the error affected the verdict.

*State v. Davis*, 336 Or 19, 33-35, 77 P3d 1111 (2003). That is the situation in the present case. The effect of refusing the requested instruction with respect to Carleton and Murray was that the jury was not told that it could not convict on the basis of their testimony unless that testimony was corroborated, and that it should view their testimony with distrust. However, their testimony *was* corroborated—by Flemming's statements introduced by the state without objection (Flemming himself did not testify). The question thus reduces to whether there is little likelihood that a "view with distrust" instruction would have resulted in a different verdict. We conclude that it would not. All of Carleton's and Murray's significant testimony was cumulative to statements by Flemming implicating defendant. The error in refusing to give an accomplice testimony instruction was therefore harmless.

Affirmed.