LAGESEN, J.
*85 *122 Believing an intruder to be in his apartment, defendant fired his gun. The bullet passed through the wall into the neighboring apartment where a family of six was sleeping. The bullet, fortunately, did not hit anyone, but defendant's conduct led to seven charges against him: one count of unlawful use of a weapon (UUW), ORS 166.220, and six counts of recklessly endangering another person, ORS 163.195.[1] At trial, defendant claimed that he had fired his gun in self-defense, aiming it at the intruder in his apartment in defense of his teenage daughter and himself. The jury acquitted defendant of the UUW charge, but convicted him of the reckless endangerment charges.
On appeal, defendant raises four assignments of evidentiary error: (1) the trial court erred by admitting evidence related to the bullet's trajectory without requiring the state to demonstrate that the evidence met the standards for admission of scientific evidence under OEC 702 and State v. O'Key , 321 Or. 285, 899 P.2d 663 (1995) ; (2) the trial court erred in admitting evidence of defendant's past interactions with the police as relevant to the issue of self-defense; (3) the trial court erred in admitting evidence of defendant's 9-1-1 phone calls that led to his past interactions with the police as relevant to the issue of self-defense; and (4) the trial court erroneously permitted the prosecutor to exceed the scope of direct examination on cross-examination of defendant. For the reasons that follow, we conclude that the trial court erred in admitting the evidence of defendant's prior 9-1-1 calls and related police encounters and that the error is not harmless. We therefore reverse and remand without reaching defendant's other claims of evidentiary error.
The facts pertinent to the issue before us are procedural and not in dispute. Before trial, defendant filed notice of intent to rely on the defense of self-defense under ORS 161.209. The state then moved in limine to introduce evidence of "other bad acts" of defendant to counter defendant's claim of self-defense. That evidence consisted of tapes of defendant's four calls to 9-1-1 in the four-month period *123 preceding the incident at issue and testimony from Officer Frutiger about his contacts with defendant in response to those calls. According to the state, the evidence tended to demonstrate that defendant overreacts to the conduct of other people in his apartment complex. The state asserted that the evidence was relevant under State v. Johns , 301 Or. 535, 725 P.2d 312 (1986), because it involved prior similar incidents that, in the state's view, would refute defendant's claim of self-defense by showing that defendant did not reasonably believe that he had to use physical force to defend himself and, in particular, did not reasonably believe that he needed to use deadly force:
"The State is going to have to disprove that at trial, that there was no reasonable belief, and I would argue that these 9-1-1 calls, as well as the interactions that [defendant] has had with Officer Frutiger go to-that there was no reasonable belief that somebody was actually breaking into his house that night. Officer Frutiger, when he responded has not found-did not find any kind of evidence that anybody had been trying to break into [defendant's house] when he had responded before and he has never made contact with the people that [defendant] had gotten into arguments with.
"I think the 9-1-1 calls are particularly enlightening, in that you can kind of hear that [defendant] is tending to instigate some of these interactions with his neighbors, so that's why the State is seeking to enter all of these prior instances into evidence, *86 as to kind of rebut the reasonable belief piece of this[.]"
The state argued further that "there is case law that allows the defense in assault trials to bring in specific instances of violence that the defendant knows about on behalf of the victim when the defendant is claiming self-defense," and that that case law was "a pretty strong argument when you hear that for the State's side of things in this particular case."
Defendant opposed the introduction of the evidence. In response to the state's argument that the prior incidents were relevant under Johns , defendant disputed that the state had demonstrated that those prior incidents were similar enough to the current case to support the inference that the state was urging: "I think the State is going to have to prove *124 that these were false allegations initiating false 9-1-1 calls to say that this is kind of the same situation, but in none of those previous 9-1-1 calls or conversations with Officer Frutiger was there any evidence that this-that these incidents never actually occurred." Second, he argued that there was "no case law that says the State can bring in prior instances where the defendant has lied or made up stories" for the purpose of demonstrating that a defendant's claim of self-defense in a particular case is made up. Defendant did not argue that the evidence, if relevant, should be excluded under OEC 403, or otherwise request that the trial court balance the probative value of the evidence against the danger of unfair prejudice presented by it.
The trial court ruled that the evidence was relevant "on the issues of whether or not [defendant's] fear of the alleged intruder was reasonable and whether his need to use deadly force against his alleged intruder was reasonable." It further ruled that the evidence, in addition to being relevant, was admissible under OEC 403 and OEC 404. The state subsequently introduced it at trial. The state then relied on that evidence to argue that the jury should discredit defendant's story of an intruder, in full or in part.[2] With respect to the reckless endangerment charges in particular, the state argued that the jury should infer that defendant was a paranoid person who overreacted under the circumstances by carelessly firing a warning shot into the wall of the neighboring apartment:
"Finally, what the State's theory really comes down to-and this is where the 9-1-1 calls ultimately really come in. It's [defendant] is paranoid. Does he live in a bad neighborhood? Yes, and a paranoid person with a bad neighborhood is not a good combination because he's going to see the small little behavioral things that are going on outside in his apartment complex as really, really big things, and use of self-defense is all about reasonable beliefs.
"And on this particular night this is really what happened, is it comes down to the fact that [defendant] is paranoid, always hearing noises outside, and he doesn't like all the goings on in his apartment complex and he, over the *125 course of months, video records his neighbors doing small things. We heard the officer's testimony about the fact that there was nobody else from that particular night and that all of the video were just people kind of milling around the apartment complex, so that night, once again, he's being paranoid and is firing off a shot into his wall, and that he told you he called 9-1-1 all those prior times. He calls 9-1-1 once again claiming that somebody was trying to break into his house and reports that he fired a shot into the wall."
The jury ultimately convicted defendant of the reckless endangerment charges, but acquitted him on the UUW charge.
On appeal, defendant argues that the trial court erred in admitting the evidence of his past 9-1-1 calls, as well as the evidence of his past interactions with Frutiger. Noting that the trial court deemed that evidence relevant to the issue of whether his belief about the need to use force, and the extent of the force needed, was reasonable, defendant argues that the evidence was not probative on that point because, under our case law, the reasonableness of a defendant's beliefs about the need to use force, and the extent of force to use, must be assessed under an objective standard that does not depend on the defendant's personal characteristics. Defendant also argues that the trial court erred in *87 admitting the evidence under OEC 403. Defendant acknowledges that he did not make the same precise arguments below that he is making on appeal, but asserts that the arguments that he did make were adequate to preserve the ones that he is pressing on appeal. In the alternative, defendant requests that we review for plain error.
The state responds that defendant did not preserve the issues that he is raising on appeal because the arguments he made to the trial court are different from the ones he is making to us, and urges us to reject defendant's claim of error on preservation grounds. Alternatively, the state argues that the trial court correctly concluded that the evidence was relevant to demonstrate that "perhaps defendant is not a reliable narrator of the events around him, and defendant's reliability was central because he was the primary witness to the objective facts from which the jury was to assess the reasonableness of a perceived threat." Finally, *126 the state argues that the admission of the evidence, if erroneous, was harmless.
We first address preservation. "Exactly what suffices to preserve a particular argument 'is not something that can be explained by a neat verbal formula.' " State v. Parnell , 278 Or. App. 260, 265, 373 P.3d 1252 (2016) (quoting State v. Walker , 350 Or. 540, 548, 258 P.3d 1228 (2011) ). The objective of the requirement is "procedural fairness to the parties and to the trial court." Peeples v. Lampert , 345 Or. 209, 220, 191 P.3d 637 (2008). "Ultimately, the preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." State v. Parkins , 346 Or. 333, 341, 211 P.3d 262 (2009).
Here, we conclude that the policies underlying the preservation rule have been satisfied and that defendant's assignments of error are therefore preserved. We do so for two primary reasons.
First, the issue of the evidence's relevance to defendant's claim of self-defense was before the trial court, and the trial court explicitly ruled on the issue. See State v. Hitz , 307 Or. 183, 188, 766 P.2d 373 (1988) (explaining that, ordinarily, for purposes of preservation, it is "essential" that an issue have been raised at trial, but not that a particular source of authority have been identified, or argument asserted); see also State v. Haugen , 349 Or. 174, 190, 243 P.3d 31 (2010) ("A party ordinarily may preserve an issue for review merely by raising an issue at trial[.]"). Thus, the state, as the proponent of the evidence, had a fair opportunity to develop its arguments as to why the evidence was relevant to the reasonableness of defendant's beliefs about the need to defend himself. In addition, because the state laid out its theory of relevance in its arguments in support of its motion in limine to admit the evidence, the trial court had a fair opportunity to address the question of whether the proffered evidence was probative on the point for which the state sought to admit it.
Second, defendant's arguments below fairly apprised both the state and the trial court that defendant contested *127 the relevance of the evidence to his claim of self-defense. Although it is true that defendant's arguments are not identical to the ones that he is making now, that is at least partially attributable to the fact that, in the time between trial and appeal, the Supreme Court has provided significant clarification on how lower courts are to determine the relevance of evidence of a criminal defendant's prior bad acts. It is clear from the record that the parties and trial court all understood the Supreme Court's decision in Johns to supply the framework for determining whether the evidence at issue was relevant. See Johns , 301 Or. at 555, 725 P.2d 312 (setting forth framework for determining relevance of prior acts evidence, at least under certain circumstances). It was not until after trial that the Supreme Court decided State v. Turnidge , 359 Or. 364, 374 P.3d 853 (2016), which clarified that the Johns framework for assessing the relevance of prior bad acts evidence applied in a narrower category of cases than previously understood: those cases in which relevance turns on a doctrine-of-chances theory. Turnidge , 359 Or. at 434, 374 P.3d 853 (holding that "the analytical framework that Johns announced was specific to the 'doctrine of chances' relevancy theory at issue in that *88 case"); State v. Johnson , 281 Or. App. 51, 55, 380 P.3d 1023 (2016) (recognizing that Turnidge abrogated cases applying the Johns framework to assess relevance of prior bad acts under theories other than the doctrine of chances). Viewed in the light of the legal landscape, defendant's arguments below adequately staked out the position that he is taking on appeal to preserve it. In other words, it was not unreasonable for defendant to frame his relevance arguments in terms of Johns at the time of trial, and his shift in argument on appeal is reasonable in light of Turnidge . See State v. Jury , 185 Or. App. 132, 137, 57 P.3d 970 (2002) ("The 'benchmark' for error is the law existing as of the time the appeal is decided.").
Under these circumstances-where the issue was raised below, where the state had a fair opportunity to make its case that the evidence was relevant, where the trial court had a fair opportunity to assess the evidence's relevance, and where defendant's change in arguments from trial to appeal is consistent with the Supreme Court's intervening clarification of the law, we conclude that defendant's challenge to *128 the relevance of the evidence of the previous 9-1-1 calls and defendant's prior interactions with Frutiger is preserved for appeal.[3]
We turn to the question of whether the evidence was relevant on the point for which it was admitted-defendant's claim of self-defense. Reviewing the trial court's ruling for legal error, we conclude that the evidence was not relevant.
ORS 161.209 sets forth the elements of the defense of self-defense. It provides:
"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for that purpose."
Here, the trial court admitted the challenged evidence as probative of whether defendant "reasonably believe[d]" that the use of force was needed to defend against the imminent use of force by the alleged intruder, and whether defendant "reasonably believe[d]" that the degree of force used was necessary. However, the legal standard for assessing the reasonableness of a defendant's belief about the need for force, or the extent of force necessary, is an objective one, and does not turn on the particular characteristics of an individual defendant. State v. Bassett , 234 Or. App. 259, 228 P.3d 590, rev. den. , 348 Or. 461, 234 P.3d 983 (2010). As we have explained, the relevant question is whether a defendant's belief regarding the need for force is "objectively reasonable, as judged 'from the standpoint of a reasonable [person] under the same circumstances.' " Id . at 264, 228 P.3d 590 (quoting State v. Lawton , 4 Or. App. 109, 110, 476 P.2d 821 (1970), rev. den. (1971) ). Thus, we have held, for example, a defendant's intoxication at the time of a use of force has no bearing on the question of whether the defendant's belief about the need for force was objectively reasonable because reasonableness must be assessed from the perspective of the hypothetical reasonable *129 person confronting the same circumstances that the defendant faced. Id . at 263-65, 228 P.3d 590 (holding that trial court correctly instructed jury that the defendant's voluntary intoxication was not to be considered in assessing the reasonableness of the defendant's belief about the need for force).
In view of that objective legal standard for determining the reasonableness of a defendant's belief in the need for force, the trial court erred by concluding that the evidence of defendant's 9-1-1 calls and previous interactions with Frutiger was relevant on that point. The evidence was not probative one way or another of the circumstances that defendant confronted that night and, thus, did not bear on whether a reasonable person, in the same circumstances, would perceive the force used by defendant to be necessary.
The state does not appear to dispute that the evidence is not substantively relevant under the objective legal standard that *89 governs the assessment of whether a defendant reasonably believes in the necessity for the use of force and reasonably believes that a particular degree of force is needed. Instead, the state argues that the evidence was probative of the reliability of defendant's testimony regarding the events on the night in question, and that that was the purpose for which the state offered the evidence: "[T]he state offered the evidence for the * * * purpose of establishing that perhaps defendant is not a reliable narrator of the events around him, and defendant's reliability was central because he was the primary witness to the objective facts from which the jury was to assess the reasonableness of a perceived threat."
The state's argument, at its core, is an argument that the evidence was relevant as impeachment evidence, to cause the jury to question defendant's version of events. And, although the state, in closing argument, certainly urged the jury to discredit defendant's version of events based on that evidence, at the time the state offered the evidence it did not argue that the evidence was admissible impeachment evidence, and we do not understand the trial court to have ruled that it was relevant or admissible as impeachment evidence. We understand the court to have ruled that the evidence was substantively relevant on the point of whether *130 defendant's belief regarding the need for force was reasonable. Further, the evidence was not admissible for impeachment purposes. OEC 608(2) plainly states:
"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in [ OEC 609 ], may not be proved by extrinsic evidence."
Thus, the evidence of defendant's previous calls to 9-1-1 and his previous interactions with Frutiger, even if relevant to the jury's assessment of the "reliability" of defendant's testimony, was not admissible for that purpose.
That leaves the question of harmlessness. Error is harmless if "there was little likelihood that the error affected the jury's verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). Here, we are persuaded that there is some likelihood that the error affected the jury's verdict. At trial, the evidence was in conflict as to how defendant fired the bullet. Defendant testified, consistent with his statements to the 9-1-1 dispatcher on the night of the incident, that he had aimed at the intruder but the bullet had gone through the wall. If the jury were to credit that version of events, it may well have doubts about whether defendant acted recklessly-that is, that defendant was "aware of and consciously disregard[ed] a substantial and unjustifiable risk" to his neighbors-as the jury was required to find to convict defendant of reckless endangerment. ORS 163.195(1) (defining offense of reckless endangerment); ORS 161.085(9) (defining "recklessly").
The state's competing theory, which it advocated to the jury, was that defendant had fired a warning shot into the wall, a version of events that makes a stronger case for defendant's recklessness. In urging the jury to credit the responding officer's version of events, and discredit defendant's version of events, the state argued that defendant's previous history of calling 9-1-1 demonstrated that defendant was a paranoid person whose story should be rejected. In view of the state's heavy reliance on the evidence, we conclude that the error in admitting it was not harmless. Accordingly, we must reverse the judgment of conviction and remand for a new trial.
*131 Convictions for recklessly endangering another person reversed and remanded; otherwise affirmed.

The state initially charged defendant with two counts of unlawful use of a weapon, but dismissed the first count.

Defendant's version of events was corroborated at trial by the testimony of his teenage daughter.

Because it ultimately is not necessary for us to reach the question, we do not address whether defendant preserved his challenge to the admission of the evidence under OEC 403.