POWERS, J.
*555 Defendant appeals from a judgment of conviction for burglary in the first degree, ORS 164.225, assigning error to the denial of his motion for a judgment of acquittal.[1] The state proceeded at trial on the theory that defendant unlawfully entered the apartment of his former girlfriend "with the intent to commit theft and/or criminal mischief therein." Because there is insufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant entered the apartment with the intent to commit theft or criminal mischief, we reverse defendant's burglary conviction and remand with instructions to enter a judgment of conviction for first-degree criminal trespass.[2]
We review the denial of a motion for a judgment of acquittal to determine whether, after viewing the facts and all reasonable inferences in the light most favorable to the state, "a rational trier of fact * * * could have found the essential elements of the crime beyond a reasonable doubt." State v. Cunningham , 320 Or. 47, 63, 880 P.2d 431 (1994), cert. den. , 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). We state the following material facts in accordance with that standard.
Defendant broke into the locked apartment of his former girlfriend while she was at work, causing damage to the door frame in the process. Although he occasionally was allowed to stay at the apartment and even had his own food and clothing there, defendant did not have permission to be in the victim's apartment that day. After breaking into the victim's apartment, defendant turned on the lights, ate a can of his chili, rearranged pictures on the refrigerator, moved some pillows, and watched television. Defendant also left the victim a lengthy handwritten note, which provided, in part:
"I'm SORRY!
*556 "I KNOW you will be mad at me because of the door and I understand and you have every right to be but I also had no choice I believe. NONE!
"I HAD to eat and you would not talk to me last night to tell you I was leaving anyway, before the scene with my mom.
*75 "If you need something to tell the landlord or management company for them to fix it without you or I getting in trouble with them or the police, tell them your boyfriend thought you had a seizure and needed help after he kept calling with no answer and you weren't make a sound so he broke in the door and found you weren't even home and happened to be babysitting elsewhere and your phone had gotten shut off without you knowing it so it was all a mistake.
"* * * * *
"I've told you, I have no options left and we need to seriously talk."
(Capitalization and underlining in original). In the note, defendant also asked the victim to let him come by the apartment on occasion:
"I only have you to help me and I need to shower twice a week there at your [apartment], and it is the only place I can even fix food now also, so can I come by to eat once a day without trying to stay, I promise [it's] just to visit and to eat and then I'll leave and then after Feb. I'll be gone. But we still need to talk nice and calm about this face to face okay."
When the victim returned home, she found that her door was broken and open, and called the police. When asked by one of the investigating officers what happened at the victim's apartment, defendant said that he broke into the house because he was concerned that the victim was having a seizure. Even after he was told by the officer that his statement was eerily similar to what he wrote in the note to the victim suggesting what she should tell the landlord, defendant continued to maintain that he broke into the apartment because of his concern for her. In so doing, however, defendant acknowledged that he did not have permission to force open the victim's door.
*557 Defendant was charged with burglary in the first degree for unlawfully entering the victim's apartment "with the intent to commit theft and/or criminal mischief therein" and criminal mischief in the second degree for intentionally damaging the door, which is not at issue on appeal.[3] At trial, defendant waived his right to a jury. After the state presented its case, defendant moved for a judgment of acquittal on the burglary charge, arguing that "[a]lthough there is evidence that [defendant] unlawfully entered the apartment[,] there's no evidence that [defendant] did so with-even in the light most favorable to the state with the intent to commit a crime therein." The state responded by arguing that there was sufficient evidence to deny the motion because defendant caused damage to the interior of the doorframe and that in any event defendant committed theft or theft of services by using the electricity inside.[4] On the latter point, the state explained, "And we didn't charge it but it's still a theft. It's a theft of services, just using electricity, and he clearly intended to do that because he used it." The trial court denied defendant's motion.
After the parties made their closing arguments, the trial court found defendant guilty of both the second-degree criminal mischief charge for the damage to the doorway and the first-degree burglary charge. On the latter issue, the trial court explained, "I do make a finding that the damage caused as it relates to the entry does not constitute attempt to commit a crime, or there was no *76 intent to commit the *558 crime of criminal mischief therein based on [ State v. Mayea , 170 Or.App. 144, 11 P.3d 264 (2000) ]. The only basis for finding that there was intent to commit a crime of theft-crime therein was the theft of services related to utilities and whatever."
On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal and argues that there was insufficient evidence to establish that he entered the apartment with the intent to commit criminal mischief, theft, or theft of services, focusing on whether his use of electricity within the apartment provided sufficient evidence for the trial court to deny his motion.
For its part, the state renews part of the argument it made to the trial court, primarily focusing on the use of the electricity for lights and television as a basis of his intent to commit theft or theft of services when he entered the apartment.[5] The state contends that defendant's use of the lights and television after he entered the apartment sufficiently "appropriated" or "deprived"-as those terms are used in ORS 164.005 -the victim or her landlord of electricity. The state reasons that, viewed in the light most favorable to the state, there was sufficient evidence to prove all of the elements of theft and theft of services, and therefore a reasonable factfinder could infer that defendant entered the victim's apartment with the intent to commit those crimes. We disagree.
A person commits the crime of burglary in the second degree when a person "enters or remains unlawfully in a building with the intent to commit a crime therein." ORS 164.215(1). If the building is a dwelling, however, the crime is elevated from second-degree burglary to burglary in the first degree. ORS 164.225(1). "A person enters unlawfully when the person goes onto or into the premises without authorization." State v. J.N.S. , 258 Or.App. 310, 316, 308 P.3d 1112 (2013). "A person remains unlawfully when, after entering with authorization, the person fails to leave after the authorization expires or is revoked." Id. (citing State v.
*559 White , 341 Or. 624, 639, 147 P.3d 313 (2006) ). In this case, it is undisputed that defendant entered the victim's apartment unlawfully and it is further undisputed that the state proceeded at trial on that theory alone, rather than on an alternative theory (or on a combined theory) that he remained in the apartment unlawfully. Therefore, the only issue we address is whether the state presented sufficient evidence such that a reasonable finder of fact could find beyond a reasonable doubt that defendant had the requisite intent when he unlawfully entered the apartment.
The state focuses on whether defendant's use of the lights and television in the apartment "appropriated" or "deprived" the victim or her landlord of the use of the electricity, because he "used all of the economic value and benefit of the electricity during the time he used the lights and television." (Emphasis in original.) That argument, however, neglects the paucity of evidence-even in the light most favorable to the state-demonstrating defendant's intent when he broke into the apartment. That is, even if the state is correct that defendant used all of the economic value and benefit of the electricity-an issue that we need not consider-there is insufficient evidence for a reasonable factfinder to conclude beyond a reasonable doubt that defendant intended to commit any crime related to the electricity when he broke into the apartment.
Viewing the evidence in the light most favorable to the state, there is evidence to show that defendant used the utilities inside, evidence to show that he wanted to eat his food that was inside, and evidence that the apartment is the only place that he can prepare food.[6] Given that evidence, it is not reasonable to infer that defendant broke into the apartment with the intent to commit a crime related to the electricity. Even if defendant's *77 use of electricity rises to the level of criminal activity, it is too speculative to conclude that he unlawfully entered the apartment with the intent to commit any crime related to the use of electricity. See J.N.S. , 258 Or.App. at 321, 308 P.3d 1112. *560 In J.N.S. , the youth was found within the jurisdiction of the court for, among other acts, conduct that, if committed by an adult, would constitute second-degree burglary. Id. at 314, 308 P.3d 1112. One of the issues on appeal was whether the youth had the requisite intent to commit a crime therein when he unlawfully entered a vacant house. Id. at 316, 308 P.3d 1112. The state relied on his possession of a key obtained inside the house, arguing that it was sufficient to show he had the requisite intent to commit a crime therein. Id. at 320, 308 P.3d 1112. We disagreed, stating:
"Thus, to conclude that youth possessed the requisite criminal intent, the court would have to infer that, because youth possessed a key from inside the house, he had formed the intent to commit theft inside the house when he unlawfully entered. That inference is impermissibly speculative."
Id. at 321, 308 P.3d 1112. Similarly here, to conclude that this evidence taken together is legally sufficient to prove beyond a reasonable doubt that defendant had the intent to commit a crime related to the use of electricity when he unlawfully entered would require speculation, as such a conclusion does not follow logically from any inferences supported by the evidence. Accordingly, viewing the evidence in the light most favorable to the state, we conclude that no rational trier of fact could find beyond a reasonable doubt that defendant intended to commit theft or theft of services upon entry into the apartment, and the trial court erred in denying defendant's motion for a judgment of acquittal.
The parties agree that, if we conclude that the trial court erred in denying the motion for a judgment of acquittal, the proper remedy is to remand with instructions to enter a conviction for first-degree criminal trespass. Because first-degree criminal trespass is a lesser-included offense of burglary in the first degree, State v. Litscher , 207 Or.App. 565, 570, 142 P.3d 549 (2006), and it was uncontested at trial that defendant illegally entered the dwelling, we reverse and remand for entry of a judgment of conviction of first-degree criminal trespass. See State v. Touchstone , 188 Or.App. 45, 48, 71 P.3d 536 (2003) (remanding for entry of judgment of conviction on lesser-included offense is appropriate when the elements of the lesser-included offense have *561 been alleged and there is no dispute as to the sufficiency of the evidence as to those elements).
Judgment of conviction for burglary reversed and remanded with instructions to enter a judgment of conviction for first-degree criminal trespass; remanded for resentencing; otherwise affirmed.

Defendant also was convicted of second-degree criminal mischief, which he does not challenge on appeal.

Defendant also filed a supplemental pro se brief, which extensively details the circumstances of the incident from his perspective. We reject without discussion the arguments contained in that pro se brief.

Although the indictment on the first-degree burglary charge alleged that defendant "did unlawfully and knowingly enter and remain in " the victim's apartment, the parties proceeded at trial solely on the theory that he entered the apartment unlawfully. Thus, it is undisputed that the state had to prove that he had the intent to commit "theft and/or criminal mischief therein" when he entered the apartment.

Theft of services under ORS 164.125 is a separate crime from "theft" as that term is described in ORS 164.015. Despite not being alleged in the indictment, the state first introduced the theft of services theory of the burglary charge in its response to defendant's motion for a judgment of acquittal. Given that we conclude that there was insufficient evidence of defendant's intent to commit any crime-whether included in the indictment or not-when he unlawfully entered the victim's apartment, we need not address whether the state may rely on theft of services as part of the burglary charge even though it did not appear in the indictment. See State v. Sanders , 280 Or. 685, 691, 572 P.2d 1307 (1977) (holding that a burglary indictment is required to specify the crime a defendant is alleged to have intended to commit at the time of the unlawful entry).

On appeal, because the state abandons its argument that defendant intended to commit criminal mischief when he unlawfully entered the victim's apartment, we do not discuss it further.

Although there is evidence that defendant ate while in the apartment, the victim did not testify to any signs of food preparation. When asked "[w]ere there dishes in the sink or anything like that?" she answered that "[t]here probably was before" and did not expand further.