LAGESEN, J.
*743 This consolidated appeal involves two criminal cases that were tried separately but sentenced together. In one case, A159583 (the drug case), defendant seeks reversal of his conviction for unlawful delivery of methamphetamine as a commercial drug offense, ORS 475.890(2). He contends that a key witness against him was his accomplice and that the trial court erred when it concluded otherwise and refused to instruct the jury that an accomplice's testimony should be viewed with distrust. In the other case, A159582 (the burglary case), defendant seeks reversal of his conviction for first-degree burglary, ORS 164.225, his conviction for identity theft, ORS 165.800, and his convictions for two counts of endangering the welfare of a minor, ORS 163.575. There, he asserts that the trial court erred in denying his motion for judgment of acquittal on the burglary charge because there was insufficient evidence for a rational trier of fact to find that defendant intended to commit theft, as the indictment alleged defendant intended, when he made the unlawful entry into a house that led to the charge. Defendant also asserts that the trial court erred when it did not instruct the jury that, on the charges of burglary, identity theft, and endangering a minor, at least 10 jurors would have to concur as to whether *482 defendant was liable as the principal or as an accomplice.
For the reasons that follow, we conclude that the trial court erred when it denied defendant's motion for judgment of acquittal on the burglary charge, and that it plainly erred when it did not provide a concurrence instruction with respect to the charge of identity theft. Therefore, in A159582, we reverse defendant's burglary conviction and remand with instructions to enter a judgment of conviction for first-degree criminal trespass, reverse and remand defendant's conviction for identity theft, and remand for resentencing, but otherwise affirm the judgments on appeal.
I. THE DRUG CASE
In defendant's drug case, he was convicted of two drug offenses: delivery of methamphetamine as a commercial drug offense (Count 1) and possession of methamphetamine (Count 2). As to Count 1, the state asserted that the *744 evidence was sufficient to prove a Boyd delivery: a theory of delivery that defendant possessed a large amount of methamphetamine with the intent to sell or otherwise transfer it. See State v. Villagomez , 362 Or. 390, 395, 412 P.3d 189 (2018) (describing the theory of delivery that we held in State v. Boyd , 92 Or. App. 51, 756 P.2d 1276 (1988), was sufficient to prove delivery of a controlled substance). In support of that theory, the state introduced evidence that defendant was found in possession of a backpack containing user amounts of methamphetamine, drug packaging materials, a scale, and customer lists. To further make its case that defendant intended to transfer the methamphetamine found in his possession, the state introduced testimony from defendant's acquaintance, Kolln. Kolln testified generally that, on past occasions, she had obtained methamphetamine from defendant in exchange for driving him around to deliver methamphetamine to other customers and for arranging communications between defendant and other customers.
Contending that Kolln qualified as an "accomplice" within the meaning of ORS 10.095(4), defendant asked the trial court to instruct the jury that it should view an accomplice's testimony with distrust under that provision.[1] The trial court denied the request. It concluded that Kolln would only qualify as an accomplice for purposes of the instruction if she could be prosecuted for the same Boyd delivery for which defendant was being prosecuted, but that there was no evidence that would support charges against Kolln for that particular delivery.
On appeal, defendant assigns error to the trial court's refusal to instruct the jury that it should view the testimony of an accomplice with distrust. The state responds that the trial court correctly declined to give the instruction because there was no evidence that would allow a finding *745 that Kolln was defendant's "accomplice" for purposes of ORS 10.095(4). Because there is no question that defendant's proposed instruction correctly states the law, we review by viewing the record in the light most favorable to defendant, the requesting party, to determine whether there is evidence to support the delivery of the instruction. State v. Black , 208 Or. App. 719, 723, 145 P.3d 367 (2006). In this case, the disputed issue is whether the evidence is sufficient to establish that Kolln was an accomplice witness within the meaning of ORS 10.095.
A witness qualifies as an accomplice for purposes of the instruction authorized by ORS 10.095(4) if the evidence demonstrates that the witness could be charged with the same offense (or offenses) for which the defendant is on trial. Black , 208 Or. App. at 723-24, 145 P.3d 367 (citing State v. Hull , 286 Or. 511, 515-16, 595 P.2d 1240 (1979) ); see also State v. Weston , 109 Or. 19, 32, 219 P. 180 (1922) (explaining that the test for whether a witness is an accomplice is whether the witness could be indicted for "the *483 offense for which the defendant was indicted and tried"). In other words, the evidence must be sufficient to support a finding of "probable cause to charge the witness with the offense for which defendant is on trial." Hull , 286 Or. at 516, 595 P.2d 1240. Under the circumstances of this case, that means we must decide whether "there is a substantial objective basis for believing that, more likely than not," the offense of delivery of methamphetamine was committed, and that Kolln aided or abetted in its commission. Black , 208 Or. App. at 724, 145 P.3d 367.
Before us, defendant does not dispute that the evidence is insufficient to give rise to charges against Kolln for the particular Boyd delivery for which the state elected to prosecute defendant. Instead, as we understand his argument, defendant contends that the indictment was broad enough to encompass other deliveries by defendant and that the evidence was sufficient to support charges against Kolln for those deliveries. He asserts: "It makes no difference that the state chose to rely on conduct that Kolln did not aid and abet, because the evidence was sufficient to support an indictment for conduct that she did aid and abet." The state takes a narrower view, arguing that, for defendant to be entitled to the requested instruction, the evidence must be *746 sufficient to show that Kolln could be charged with the same alleged criminal conduct on which, as a factual matter, the charge against defendant hinged, and that the record would not support a reasonable inference that, more likely than not, Kolln aided or abetted the Boyd delivery for which, as a factual matter, defendant was being prosecuted.
We agree with the state for two reasons. First, although there are no published cases that address that precise issue, longstanding Oregon case law indicates that a witness qualifies as an accomplice only if the evidence implicates the witness in the particular conduct for which the defendant is being tried, and does not qualify as an accomplice merely because there are other crimes involving the defendant for which the witness could be tried. In State v. Walters , 105 Or. 662, 209 P. 349 (1922), the Supreme Court concluded that the trial court correctly declined to instruct the jury that an accomplice's testimony should be viewed with distrust in the defendant's trial for homicide, where the evidence demonstrated that the putative accomplice had participated in three robberies with the defendant "but the record [did] not disclose a word of evidence having the slightest tendency to show that he participated in or was connected with the homicide" for which the defendant was on trial. Id. at 670, 209 P. 349. That suggests that, even if a particular witness would qualify as a defendant's accomplice for other criminal acts, the witness does not qualify as the defendant's accomplice for purposes of the instruction unless there is evidence implicating the witness in the particular conduct for which the defendant is on trial.
Second, the purpose for the instruction that an accomplice's testimony should be viewed with distrust (and the other instructions regarding the evaluation of accomplice testimony) is to address the concern that "criminals may falsely accuse others * * * to minimize their own culpability." State v. Simson , 308 Or. 102, 110, 775 P.2d 837 (1989). But, "[t]his concern is not present when the alleged accomplices are not, in fact, trying to shift blame." Id. That, too, suggests that, where there is no evidence linking a witness to the particular conduct for which, as a factual matter, a defendant is on trial, the witness does not qualify as an accomplice for *747 purposes of the instruction. That is because, where there is no evidence that a witness participated in the particular conduct for which a defendant is on trial, there is no reason to think that the witness is attempting to minimize their own culpability by shifting blame to the defendant.
In sum, the trial court correctly concluded that Kolln was not an accomplice for purposes of the instruction under ORS 10.095(4) that an accomplice's testimony should be viewed with distrust. Accordingly, the trial court properly declined to deliver that instruction.
II. THE BURGLARY CASE
A. Background
The charges against defendant in the burglary case arose largely out of a scheme put *484 together by defendant's friend Tibbetts. Tibbetts, a single mother, procured a key to a vacation home in Lincoln City and moved in illegally with her children. To protect herself in the event that she was discovered, Tibbetts generated documents to make it look as if she had a rental agreement for the house. If Tibbetts was caught, her plan was to say that she had rented the house through Craigslist and must have been scammed:
"Who in their right mind is going to tell somebody they can't live there if they're a single mom and they were a victim of a crime? And that was my-my scheme, my plan, my thinking."
Defendant helped Tibbetts download some of the paperwork she needed for her plan, and also stayed in the house two of the four nights that Tibbetts was in it-the first night and the last night. Kolln also stayed at the house, and brought a couple of guests one night. While Tibbetts was in the house, she used methamphetamine each night except one. Defendant supplied the methamphetamine to Tibbetts, as did Kolln. Defendant also used methamphetamine on the two nights he stayed at the house. Tibbetts's minor children were present in the house while the adults used methamphetamine. The ploy ended after Tibbetts's fiancé was arrested on a warrant and told police about Tibbetts's plan with the house. While she was in the house, Tibbetts made false identification and other documents associated with *748 other people, and possessed identification not belonging to her, including the identification of Benfit.
For his conduct, defendant was charged with, among other things, first-degree burglary (Count 1), second-degree theft (Count 4), several counts of identity theft (Counts 2, 3 and 8), and two counts of endangering the welfare of a minor (Counts 9 and 10). With respect to the burglary charge, the indictment alleged that defendant had "the intent to commit the crime of theft" at the time that he "unlawfully and knowingly enter[ed] or remain[ed]" at the house procured by Tibbetts. At trial, the state's theory with respect to both the burglary charge in Count 1 and the theft charge in Count 4 was that the theft that defendant intended to commit when unlawfully entering or remaining at the house, and the theft that defendant, in fact, committed, was the use of the utilities at the house. As to the child endangerment charges, the state's theory was that defendant aided and abetted Tibbetts in endangering her children by supplying and using methamphetamine in the house while the children were present.
Defendant moved for a judgment of acquittal on the charges against him, including the burglary charge in Count 1 and the theft charge in Count 4. One of his primary arguments was that the evidence showed that he was, in effect, a bystander to Tibbetts's crimes, and that there was insufficient evidence to connect him to the burglary or the other crimes in the house. Although defendant's motion for a judgment of acquittal was general in nature, the trial court reviewed the elements of each charge, identifying the evidence that would support the necessary findings.
With respect to the burglary charge, the court explained that the evidence would permit a factfinder to find that defendant unlawfully entered and remained in the house and that defendant had the intent to commit theft of the utilities in the house:
"[T]he allegation that the defendant knowingly entered or remained in the dwelling, the [victims'] residence with the intent [to commit] the crime of Theft and the theft being that of the services when occupants of the-and we had some testimony from the [victims] with respect to utilities.
*749 That they would have had to expen[d] something of value they achieved by occupying *** that residence."
With respect to the theft charge in Count 4, the court initially denied defendant's motion for judgment of acquittal. It reasoned that the evidence was sufficient to convict defendant because there was evidence that defendant stayed in the home, from which it rationally could infer that defendant used utilities in the home, thereby committing theft of services. The next morning, however, the court, acting on its own accord, reconsidered its ruling and granted the motion. It did so on the basis that defendant had been charged with theft under ORS 164.045, and not theft of services under ORS 164.125.
*485 Consequently, the court reasoned, the evidence that defendant may have committed theft of utilities would not permit the jury to find that defendant had committed theft as charged:
"Now, what has caused me way too much time is Count 4, Theft in the Second Degree. Okay. This wasn't raised other than a-it was a blanket judgment for acquittal, but I'm troubled by the pleading.
"It says-it's pled Theft by Taking, but what's alleged to have been taken are services of the total value of $100 or more, the property of [the victims].
"Now, Theft of Services is not that statute, and it's not pled Theft of Services. It's a Theft by Taking. But the taking of property that they allege is services."
Despite recognizing the distinction between the crime of theft and the crime of theft of services with respect to the charge of theft in Count 4, the court adhered to its decision to deny the motion for judgment of acquittal on the burglary charge, concluding that the evidence was sufficient to permit a factfinder to find that defendant entered or remained in the house unlawfully "with the intent to commit the crime of Theft therein."
Although the state advanced principal and accomplice theories with respect to the burglary charge in Count 1 and the identity theft charge in Count 8, defendant did not request the trial court to instruct the jury that at least 10 jurors had to concur as to whether defendant was liable on *750 those charges as a principal or an accomplice, and the trial court did not supply such an instruction. Defendant also did not request the court to provide a similar concurrence instruction with respect to the child endangerment charges in Counts 9 and 10, and the trial court did not do so. The jury convicted defendant on Counts 1, 8, 9, and 10.
As noted, on appeal defendant assigns error to the trial court's denial of his motion for judgment of acquittal on the burglary charge. He argues that there was insufficient evidence to permit a finding that he intended to commit theft-as distinct from theft of services-at the time of his unlawful entry or remaining at the house, as the indictment charged. That, defendant argues, required the trial court to grant his motion for judgment of acquittal because of "the long-established requirement under Oregon law that the state, to convict of burglary, must plead and prove the specific crime that the defendant intended to commit upon entry." State v. Frey , 248 Or. App. 1, 9, 273 P.3d 143 (2012), rev. den. , 354 Or. 814, 325 P.3d 33 (2014) ; see also State v. Sanders , 280 Or. 685, 688-89, 572 P.2d 1307 (1977). Defendant also assigns error to the court's failure to instruct the jury regarding the need for concurrence with respect to each of the charges against him. Defendant treats each of his assigned errors as unpreserved, but asks that we review for plain error.
The state, in response, also viewing defendant's assigned errors as unpreserved, argues that the assigned errors do not qualify as plain, and urges us not to exercise our discretion to correct any errors. Regarding the motion for judgment of acquittal, the state argues that any error is not plain because Frey -and perhaps Sanders itself-were wrongly decided. In the state's view, the state is not required to prove the specific crime that a defendant intended to commit in order to prove burglary. Therefore, because the evidence was sufficient to support a finding that defendant intended to commit a crime upon his unlawful entry or remaining, even if that crime was not theft, defendant was not entitled to entry of a judgment of acquittal.
Regarding the trial court's failure to provide the jury with concurrence instructions, the state argues, as noted, that any error is not plain. The state reasons that, *751 because the case was decided after the Supreme Court held in State v. Phillips , 354 Or. 598, 317 P.3d 236 (2013), that a trial court must give a concurrence instruction, if requested, when the state seeks to hold a defendant liable either as a principal or as an aider or abettor, it was not plain error for the court not to deliver the instruction absent a request from either party. The state further argues that, at a minimum, the court did not plainly err when it did not provide a concurrence instruction with respect to the child endangerment charges because the state only argued to the jury that defendant was *486 liable as an aider and abettor on those charges.
B. Motion for Judgment of Acquittal
The first question we must address with respect to defendant's challenge to the denial of his motion for judgment of acquittal on the burglary charge is whether the assigned error is preserved. Although the parties both treat it as unpreserved, we conclude otherwise.
"Exactly what suffices to preserve a particular argument 'is not something that can be explained by a neat verbal formula.' " State v. Parnell , 278 Or. App. 260, 265, 373 P.3d 1252 (2016) (quoting State v. Walker , 350 Or. 540, 548, 258 P.3d 1228 (2011) ). The objective of the requirement is "procedural fairness to the parties and to the trial court." Peeples v. Lampert , 345 Or. 209, 220, 191 P.3d 637 (2008). "Ultimately, the preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." State v. Parkins , 346 Or. 333, 341, 211 P.3d 262 (2009) ; see also State v. Sanelle , 287 Or. App. 611, 619-23, 404 P.3d 992 (2017) (concluding that issue was preserved for appellate review when trial court raised and ruled on it on its own, and state had fair opportunity to respond).
Here, the policies of the preservation requirement were met. It is true that defendant did not make the precise argument to the trial court that he makes on appeal and, in particular, did not himself call the court's attention to the fact that evidence that he intended to use the utilities in *752 the house would not support a finding that he intended to commit the crime of theft, as distinguished from the distinct offense of theft of services. But, although his motion for a judgment of acquittal was general, the court understood it to raise the issue of the sufficiency of the evidence to support a finding that defendant intended to commit theft upon his unlawful entry or remaining, and the court specifically ruled on the issue. See State v. Hollingsworth , 290 Or. App. 121, 126, 415 P.3d 83 (2018).
Further, the court addressed the distinction between the crime of theft and the crime of theft of services when ruling on the motion for judgment of acquittal with respect to Count 4. That gave the state an opportunity to respond to the problem created by the fact that the state was proceeding on a theory that defendant intended to commit and did commit theft of services, although the indictment alleged an intent to commit, and the actual commission of, a different crime: theft. See State v. Dye , 286 Or. App. 626, 637, 401 P.3d 243 (2017) ("Thus, [the issue] is properly before us, notwithstanding the fact that the court, rather than defendant, first drew the distinction between generalized testimony on false memory and case-specific testimony."); see also State v. Smith , 252 Or. App. 707, 714, 288 P.3d 974 (2012), rev. den. , 353 Or. 429, 299 P.3d 890 (2013) (holding that an issue was preserved where, "given the court's and the parties' awareness of the precise issue that defendant articulates on appeal, there is no indication that development of the record was impaired because the court, rather than defendant, raised the issue").
Finally, we acknowledge that the state did not have the opportunity to make the legal argument that it advances on appeal. However, that deprivation did not unfairly disadvantage the state under the circumstances. The state's legal argument, as mentioned, is that defendant is not entitled to a judgment of acquittal based on the absence of evidence that he intended to commit theft because Frey (and maybe Sanders too)[2] erroneously concluded that the specific offense *753 that an alleged burglar intended to commit upon an unlawful entry or remaining must be pleaded and proved. But, regardless of the state's view of Frey , the trial court would have been bound by it and would have had to have granted defendant's motion for judgment of *487 acquittal, even in the face of the state's argument that the case was wrongly decided.
Under those circumstances-where defendant's motion for judgment of acquittal had the effect of putting before the trial court the sufficiency of the evidence to support a finding that defendant intended to commit theft, where the trial court recognized and raised the distinction between theft and theft of services with the parties, and where the only legal argument that the state was deprived of developing was that otherwise controlling appellate decisions were wrongly decided-we conclude that the assigned error is preserved.
Turning to the merits, we conclude that the trial court erred in denying the motion for a judgment of acquittal. Under Frey , the state was required to plead and prove the specific offense that defendant intended to commit when he unlawfully entered or remained in the house. Here, the state pleaded that defendant intended to commit theft, but there is no evidence to support a finding of that intent. Although the evidence arguably might support a finding that defendant intended to commit theft of services, ORS 164.245,[3] that is not the offense that the state alleged in the indictment that defendant intended to commit when he unlawfully entered or remained in the house. Thus, in view of Frey , the trial court erred by denying defendant's motion for a judgment of acquittal on Count 1. Although the state advances plausible arguments as to why Frey is predicated on a misreading of Sanders , we are not persuaded that our prior interpretation of Sanders was plainly wrong and decline the state's invitation to revisit it.
The remaining issue is the proper disposition. Defendant does not dispute that the evidence is sufficient to support a finding that he unlawfully entered the house. Under those circumstances, we have concluded that the appropriate *754 disposition is to remand for entry of a judgment of conviction for first-degree trespass, a lesser-included offense of burglary. See State v. Cole , 290 Or. App. 553, 560, 415 P.3d 73 (2018) ; see also State v. Touchstone , 188 Or. App. 45, 48, 71 P.3d 536 (2003) (remanding for entry of judgment of conviction for lesser-included offense under similar circumstances).
C. Instructional Error
Defendant's final assignments of error assert that the trial court plainly erred when it did not instruct the jury that at least 10 jurors needed to concur as to whether defendant was liable as a principal or as an accomplice on the charges of burglary, identity theft, and the two charges of endangering the welfare of a minor. Our disposition of defendant's challenge to the court's denial of his motion for a judgment of acquittal on the burglary charge disposes of his claim of instructional error with respect to that charge.[4] With respect to the child endangerment charges, we agree with the state that the court did not plainly err by declining to provide a concurrence instruction to the jury because, on those charges, the state's only argument to the jury in closing was that defendant was liable as an accomplice. Under those circumstances, where no meaningful principal liability theory is presented to the jury, it is not obvious that the court was required to supply a concurrence instruction. Under Phillips , the instruction is required only when the state seeks to hold a defendant liable "either as the principal or as an aider and abettor." 354 Or. at 606, 317 P.3d 236.
That leaves the question of whether the trial court plainly erred when it did not provide the instruction with respect to the charge of identity theft. We have routinely held that the failure to deliver the concurrence instruction described in Phillips constitutes plain error in cases that were tried before Phillips was decided. See State v. Wright , 281 Or. App. 399, 403, 383 P.3d 385 (2016) ; State v. Gaines , 275 Or. App. 736, 748, 365 P.3d 1103 (2015). Although we suggested in those cases that a different result might be obtained in cases decided after Phillips , our *488 reasoning in them did not *755 depend on timing in any meaningful way. As we explained in Gaines , "[a]fter Phillips , it is 'obvious' that, when the state advances competing theories of liability based on a defendant's acts as principal or as an aider-and-abettor-as the state did in this case-a jury must be instructed that at least 10 jurors must agree that the defendant is liable under one theory or the other." 275 Or. App. at 748, 365 P.3d 1103. The rule of law recognized in Gaines is not somehow less obvious because defendant's case was tried after Phillips . Thus, we conclude that the trial court plainly erred when it did not supply a concurrence instruction with respect to the charge of identity theft.
Further, we exercise our discretion to correct the error. We are persuaded on the record that the error was not harmless, in view of the competing theories of liability that the state advocated to the jury and the evidence supporting those theories. Also, defendant's failure to request the instruction was not likely the product of a reasonable strategy choice on this record. Beyond that, the consequences of defendant's conviction are grave; it is a serious felony for which he received a sentence of 22 months' incarceration. For those reasons, we reverse and remand the conviction on Count 8 for identity theft.
In A159582, Count 1 reversed and remanded with instructions to enter a judgment of conviction for first-degree criminal trespass; Count 8 reversed and remanded; remanded for resentencing; otherwise affirmed. In A159583, affirmed.

ORS 10.095 provides, in relevant part:
"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:
"* * * * *
"(4) That the testimony of an accomplice ought to be viewed with distrust ***[.]"

The state argues that Frey is predicated on a misreading of Sanders . The state further argues that, if Frey is based on a correct reading of Sanders , then Sanders is wrongly decided. The state acknowledges that we cannot overrule Sanders but makes the argument for the purpose of potential Supreme Court consideration.

But see State v. Cole , 290 Or. App. 553, 559-60, 415 P.3d 73 (2018).

On this record, there is little likelihood that the omission of the concurrence instruction affected the jury's determination that defendant unlawfully entered the house.